## STATE

v.

## Raymond LYNCH.

No. 1999–327–C.A.

Supreme Court of Rhode Island.

Aug. 12, 2004.

Christopher R. Bush, Esq., for Plaintiff.

Mark Laroche, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY
and SUTTELL, JJ.

## OPINION

SUTTELL, Justice.

The defendant, Raymond Lynch, appeals from Superior Court jury convictions of three counts of first-degree sexual assault and two counts of second-degree sexual assault. The victim of all five assaults was his developmentally impaired daughter Mary.[1] He alleges that the trial court committed thirteen distinct errors that warrant reversal of some or all the convictions, and that the trial justice abused his discretion by denying the defendant's motion for a new trial.

## Facts and Travel

At the time of the precipitating incident, Mary was sixteen years old and resided in Warwick, Rhode Island, with her parents, her younger sister, and younger brother. On Friday, September 20, 1996, Mary invited a friend from school, Michelle, to sleep over at her house. The girls watched a movie together in Mary's bed, and then fell asleep.

Michelle testified at trial that she woke up to find defendant leaning over her and rubbing the upper part of the back of her thigh. She further testified that defendant told her, "[I]f you need a place to sleep, you can come sleep with me." Michelle immediately left the Lynch household and walked home. Michelle was described as "hysterical" when she arrived home. The police were called, and responded to her home with a rape crisis counselor.

On September 24, 1996, the next school day, Michelle met with Mary–Ellen Tillot-

son, a school psychologist. Michelle testified that she did so because she was concerned that defendant might be abusing Mary. Thereafter, Ms. Tillotson called Mary to her office. Ms. Tillotson testified that Mary initially said that she was not supposed to talk about what her father did to her when her mother was at work. Mary then said that defendant had sex with her "all the time" in the basement of their home. Ms. Tillotson immediately called the Warwick Police Department and the Department of Children, Youth, and Families and later drove Mary and Michelle to the police station.

The defendant was arrested that day. Several weeks later an indictment was filed charging him with three counts of first-degree sexual assault and two counts of second-degree sexual assault against Mary, one count of second-degree sexual assault and one count of simple assault against her younger sister, and one count of simple assault against Michelle. A jury convicted him of the five counts involving Mary,[2] after which defendant filed a motion for a new trial, which was denied on May 8, 1998. The trial justice sentenced defendant to sixty years, thirty to serve, on each of the first-degree sexual assault convictions, and ten years to serve on the two second-degree sexual assault convictions, all the sentences to run concurrently. Other facts will be supplied as needed to address the issues on appeal.

## I

### Mary's Competency

 The defendant alleges that the trial justice abused his discretion in finding Mary competent to testify in light of her cognitive and communicative limitations, impairment of intellectual abilities, and the

---

1. The names of the victim and all juveniles mentioned in this opinion are fictitious.

2. The defendant was acquitted on the other three counts.

conflicting testimony at her competency hearing.

■■ Rule 601 of the Rhode Island Rules of Evidence requires that a witness be competent to testify. The trial court must make four determinations in evaluating a witness's competency: the witness must be able to "observe, recollect, communicate, and *appreciate the necessity of telling the truth.*" *Seabra v. Trafford–Seabra,* 655 A.2d 250, 252 (R.I.1995) (citing *State v. Cabral,* 122 R.I. 623, 629, 410 A.2d 438, 442 (1980)). This Court will overturn a competency decision only for abuse of discretion. *Id.* (citing *State v. Ranieri,* 586 A.2d 1094, 1098–99 (R.I.1991)). "The trial justice is afforded considerable deference in making a competency ruling since he is in the best position to assess the witness's present ability to comprehend the obligation of this oath, and to give a correct account of what he may have seen or heard." *Id.* (citing *State v. Franklin,* 103 R.I. 715, 724, 241 A.2d 219, 225 (1968)). In the case at hand, the trial justice conducted a *voir dire* of Mary, and was sufficiently satisfied that she had the ability to observe, recollect, and communicate, and that she appreciated the necessity of telling the truth. We agree.

Mary's testimony demonstrated her ability to observe. She testified that at the time of trial she lived with two housemates, and that they had their own rooms. She testified that she had a television in her room and a computer that didn't work because it was not connected. Additionally, she testified about the details concerning the multiple times that defendant sexually assaulted her.

Mary's testimony of the sexual assaults demonstrates that she had the ability to remember. The defendant notes, however, that Mary did not know what day her favorite television programs were on or whether she had any books in her room.

It was recognized at the trial that Mary does have cognitive limitations. A sexual assault, however, is a traumatic event and thus may be more clearly memorable than other everyday normal occurrences. *See State v. Girouard,* 561 A.2d 882, 887 (R.I. 1989). It is reasonable to believe that even though Mary may not have a clear recollection of the exact times and places that the alleged multiple assaults took place, she is still cognizant of the fact that the assaults occurred.

Mary demonstrated an ability to communicate by relating facts of the sexual assaults, pointing to her body parts when asked, and identifying defendant in the courtroom. This level of communication meets the requirements for competency to testify before the court. *See id.* (ability to communicate adequately demonstrated by witness relating the facts of the crime, pointing to body parts on a diagram, and identifying defendant in the courtroom). Although defendant noted that Mary could not adequately communicate whether she was going to graduate from high school that year, or what grade she currently was in, we conclude that her overall responses indicated her capacity to understand questions and to furnish intelligent answers.

■■ The transcripts also evidence Mary's knowledge of the necessity of telling the truth.

"THE COURT: And, if he asks you a question, what are you supposed to do?

"THE WITNESS: I'm supposed to talk in here.

"THE COURT: And, what are you supposed to tell us?

"THE WITNESS: Everything.

" * * *

"THE COURT: All right. Now are you going to tell us any lies?

"THE WITNESS: No.

"THE COURT: Why not?

"THE WITNESS: Because its [*sic*] very important to tell the truth."

"A child need not articulate magic words that he or she knows the difference between a lie and a truth as long as the child understands the definitions of both and was there to tell the truth." *Girouard*, 561 A.2d at 886 (citing *In re Gerald*, 471 A.2d 219, 220–21 (R.I.1984)). We defer to the judgment of the trial justice, who upon hearing this exchange, was confident that Mary in fact did understand the difference between the truth and a lie.

After reviewing the four testimonial capacities required for a finding of competency, we conclude that the trial justice did not err in finding Mary competent to testify. Though she suffered from cognitive and communicative limitations, she met the standard of competency set forth by this Court. We also note our established rule that any doubt concerning minimum credibility of the witness should be resolved in favor of allowing the jury to hear the testimony and judge the credibility of the witness themselves. *State v. Marr*, 673 A.2d 452, 453 (R.I.1996) (per curiam) (citing 1 *McCormick On Evidence*, § 62 at 91 (4th ed. Strong Prac. Treatise Series 1992)).

## II

### Testimony of the School Psychologist

 The defendant alleges that hearsay statements Mary made to Mary–Ellen Tillotson, a certified school psychologist, were improperly admitted in violation of Rule 803(4) of the Rhode Island Rules of Evidence because there was no evidence that Mary sought a medical (or mental health) diagnosis from Ms. Tillotson.

Ms. Tillotson testified that on September 24, 1996, an employee of the high school asked her to meet with Michelle. Based on her meeting with Michelle, she believed "that it was important to talk with Mary about her general well-being." Ms. Tillotson then asked Mary to come to her office with Michelle. As a result of her conversation with Mary, she called the Department of Children, Youth and Families and the Warwick police. A police officer responded to the high school and spoke to both Mary and Michelle. Ms. Tillotson made a written report and, at the request of the officer, drove both girls to the police station.

After much discussion with counsel outside the presence of the jury, the trial justice said that he would allow Ms. Tillotson to relate what Mary told her that afternoon. When the jury returned, Ms. Tillotson testified that Mary told her that:

> "She's not supposed to talk about what her dad does to her when her mom is at work. She told me that—an incident that I had related to her, she—she affirmed that something has happened to her. She told me that her father had had sex with her in the basement."

Ms. Tillotson also testified that when she asked Mary how often this had happened, Mary "seemed to be confused about the times."

 "Hearsay evidence is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Angell*, 122 R.I. 160, 167, 405 A.2d 10, 14 (1979). As a rule, hearsay statements are excluded from the evidence introduced at trial because the usual safeguards of the oath, confrontation, and cross-examination, are not available. *Id.* However, there are numerous exceptions to this rule.

Rule 803(4), "*Statements for Purposes of Medical Diagnosis or Treatment*," allows

hearsay statements to be admitted into evidence if the statements were:

"made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial."

■ "The admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion." *State v. Momplaisir*, 815 A.2d 65, 72 (R.I.2003) (citing *State v. Andreozzi*, 798 A.2d 372, 374–75 (R.I.2002) (per curiam)). The admissibility of Mary's statements hinge on whether the statements were "reasonably pertinent to the formulation of a medical diagnosis or treatment." *Id.* (citing *In re Jessica C.*, 690 A.2d 1357, 1363, 1364 (R.I.1997)).

Clearly, Mary's declarations to the school psychologist could be helpful in diagnosing her mental health issues. The statement that her father "had sex with her in the basement" might be very relevant to the treatment of emotional and psychological injuries. When the perpetrator is a member of the child's immediate household, his or her identity may well be reasonably pertinent not only to the formulation of a treatment plan, but also to ensure that the child is in a safe and secure environment so that treatment can be effectuated. *Cf. In re Andrey G.*, 796 A.2d 452, 456 (R.I.2002) (per curiam) (child's statement to doctor disclosing identity of perpetrator generally not admissible because it merely assigns fault and does not aid in diagnosis).

■ There must, however, be a proper foundation showing that the statements in question were made "for the purposes of medical diagnosis or treatment." Here, Mary did not seek out the psychologist for a diagnosis or treatment of her problems; rather, the psychologist sought out Mary. There was no indication that Ms.Tillotson identified herself to Mary as a psychologist, or that Mary even knew that she was a psychologist. Further, it is not even clear that Mary was alone with Ms. Tillotson when they spoke or whether Michelle was also present during their conversation. A declarant's motive in making the statement must be consistent with seeking diagnosis or treatment. *See, e.g., State v. Hildreth*, 582 N.W.2d 167, 169–70 (Iowa 1998); *State v. Wade*, 136 N.H. 750, 622 A.2d 832, 835 (1993). The trial justice considered this dilemma, noting:

"it's not clear from the hearsay exception as to whose purpose it is, in making the statement to a treating person, whether it's for the purposes of the treating person or for the purposes of the treated person. In other words, did [Mary] make these statements to the school psychologist for the purpose of being treated by the school psychologist or was the school psychologist listening to the statements for the purpose of treating [Mary]? * * * I had presumed that a student in the Warwick school system visiting the school psychologist on school premises in the school psychologist's office was there to be psychologized by the school psychologist. * * * I'm going to rule that it is [Mary's] purpose in making the assertion and not the psychologist['s] * * *."

The underlying rationale for admitting out-of-court statements made in the furtherance of medical diagnosis or treatment is that a person has a "strong motivation to be *truthful* about information that will form the basis of his [or her] diagnosis and

treatment." Advisory Committee's Note to Rule 803(4). In this case, there was no showing that Mary's purpose in making the statements was for diagnosis or treatment from Ms. Tillotson, and thus no showing that Mary had a "strong motivation to be truthful." After meeting with Michelle, Ms. Tillotson summoned Mary into her office. Whether Ms. Tillotson did this to "diagnose and treat" Mary or for purely investigatory reasons is of no import here. The dispositive fact is that Mary did not make these statements to Ms. Tillotson because she was seeking treatment, and thus there is no underpinning of reliability.

Moreover, there was no showing that Ms. Tillotson ever, in fact, treated Mary. When asked directly if she ever counseled Mary, Ms. Tillotson testified that she "met" with her on several occasions, but "those were not regularly scheduled counseling appointments." She then added, "They were generally at the request of someone else for me to meet with her." We conclude, therefore, that there was an insufficient foundation to support a presumption that Mary's statements to Ms. Tillotson were "made for the purposes of medical diagnosis or treatment." The trial justice seemed to recognize this, but nevertheless drew an inference that Mary was likely to be seeking treatment simply because she was speaking to the school psychologist in her office on the school premises, as she might had she been talking to the school nurse about a cut or a scrape. We conclude, therefore, that Mary's out-of-court statements to the school psychologist were not properly admissible under Rule 803(4).

It is well established that "the admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when defendant's guilt is sufficiently established by proper evidence." *State v. Micheli*, 656 A.2d 980, 982 (R.I. 1995) (per curiam) (citing *Angell*, 122 R.I. at 168, 405 A.2d at 14). "While it is true that evidence is accumulated in the course of a trial to determine a defendant's guilt, not all evidence is cumulative. 'Cumulative evidence' means 'tending to prove the same point to which other evidence has been offered.' " *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349, 358 (1992) (quoting Webster's Third New International Dictionary 553 (Unabr.1981)). Thus, to qualify as "cumulative," the evidence in question need not be introduced only after other evidence tending to prove the same point already has been admitted. Rather, the test is a retrospective one, administered at the close of all the evidence to determine whether the admission of certain evidence was harmless in light of all the evidence admitted on that point.

After reviewing the record, we conclude that Ms. Tillotson's testimony was merely cumulative in light of subsequent testimony.[3] The usual reasons for excluding hearsay statements—lack of the oath, confrontation, and cross-examination—are greatly abated here because Ms. Tillotson's testimony did not reveal anything other than that testified to by Mary herself. *See Angell*, 122 R.I. at 168, 405 A.2d at 14. The strength of the state's case against defendant was directly dependent upon the jury's assessment of Mary's credibility. We therefore conclude that the admission of this testimony was harmless error.

---

**3.** In addition to Mary's testimony, Dr. Bridget McCue testified on both direct and cross-examination that Mary related essentially the same accusations: namely, that Mary's father had both vaginal and anal intercourse with her in the basement. Mary's sister also testified during trial that Mary related an incident in which their father sexually assaulted Mary in the dining room of their home.

The defendant further argues that because Mary's credibility was at issue, Ms. Tillotson's testimony "could be conceived by the jury as a conclusive opinion that Mary had testified truthfully." We disagree.

The defendant notes that in *State v. Haslam*, 663 A.2d 902 (R.I.1995), this Court held that the trial court's allowance of the testimony of a counselor vouching for the credibility of the complaining witness was error. The defendant fails to note, however, the different circumstances of the two cases. In *Haslam*, 663 A.2d at 906, this Court concluded that repeated references to "sexual abuse recovery" by the counselor would influence the jury by adding credibility to the complaining witness's allegation that she had been sexually abused. The Court said that even though the counselor's testimony was not a literal statement of the counselor's belief in the truthfulness of the complaining witness, the testimony had the same substantive import and would be perceived by the jury as a conclusive opinion that the alleged complaining witness had testified truthfully. *Id.* Here, however, Ms. Tillotson was identified generally as a school psychologist, and the discussion between Mary and Ms. Tillotson was never characterized as "sexual abuse" counseling. In her testimony, Ms. Tillotson only repeated Mary's statements. She offered no opinion about their veracity or credibility. Additionally, Mary testified immediately after Ms. Tillotson, and thus the jury had the opportunity to hear the same story directly from Mary. Therefore, we conclude that the jury could not reasonably construe Ms. Tillotson's testimony as vouching for the credibility of Mary.

### III

### Motion to Pass

■ In the middle of Mary's direct examination by the prosecutor, she rose from her chair in the witness box, said "I heard what that was, Dad," and then made an aggressive rush from the witness stand toward defendant. She was restrained by two or three court officers in full view of the jury. The defendant argues that the Superior Court abused its discretion by not granting defendant's motion to pass the trial based on the jury's being prejudiced by Mary's actions. The defendant asserts that he did not have a fair opportunity to show Mary's "kind regard, affection, and compassion towards Raymond."

■ A trial justice's decision to deny a motion for a mistrial is accorded great weight and will not be disturbed on appeal unless it is clearly wrong. *State v. Werner*, 830 A.2d 1107, 1112–13 (R.I.2003) (citing *State v. Aponte*, 800 A.2d 420, 427 (R.I.2002); *State v. Villafane*, 760 A.2d 942, 944 (R.I.2000) (per curiam)). "[T]he trial justice enjoys a ringside seat at the trial and therefore is in the best posture to determine whether a witness's inappropriate remark [or action] has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence." *Id.* at 1113 (citing *State v. Luciano*, 739 A.2d 222, 228 (R.I.1999)).

The trial justice recessed the jury after the outburst to discuss the incident with both parties. The trial justice offered to give a curative instruction to the jury, instructing that "they [were] not to give the demonstration they saw any evidentiary weight either way." The defendant's counsel refused this opportunity. The trial justice then held that "the jury [was not] so prejudiced that they cannot weigh whatever evidence they have up to now."

Placing Mary's "aggressive rush" toward defendant in context, we conclude that the jurors would not have been so

inflamed that they would not be able to decide the case based on a dispassionate evaluation of the evidence. Because the jurors already were aware of Mary's allegations of defendant's sexual abuse, they would not be unduly surprised or prejudiced that a daughter making these allegations would hold a great deal of anger toward her father. Moreover, defendant had ample opportunity during cross-examination of Mary to inquire about any affection or kind regard that Mary might have for defendant. We therefore hold that the trial justice did not commit clear error in declining to grant the motion to pass. In this instance, the trial justice was in the best position to weigh the harm caused by this outburst.

## IV

### Instructions to the Jury

■ The defendant next argues that the trial justice committed two reversible errors in his charge to the jury. First, defendant contends that the trial justice erred by instructing the jury that evidence of Mary's past sexual activity in 1995 with another juvenile was limited for the purpose of assessing her credibility. The defendant argues that the court should have instructed the jury that it could infer from this evidence that Mary had previous knowledge of sexual activity. Secondly, defendant contends that the trial justice erred by not including an additional instruction that the "second degree sexual assault charge could also constitute simple assault."

■ Both these asserted errors, however, were waived by defendant's failure to object after the trial justice instructed the jury. It is firmly established that the "failure to object to a jury instruction precludes review of the instruction on appeal."

*State v. Pacheco,* 763 A.2d 971, 979 (R.I. 2001) (citing *State v. Bertoldi,* 495 A.2d 247, 250 (R.I.1985)); *State v. Grabowski,* 672 A.2d 879, 881 (R.I.1996). Pursuant to Rule 30 of the Superior Court Rules of Criminal Procedure,

> "[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."

■ While reviewing the issue of jury instructions on appeal, we have emphasized that during the course of the instructions, counsel are expected to listen to the judge and determine whether any error has been made. *State v. Williams,* ·432 A.2d 667, 670 (R.I.1981). It is incumbent upon counsel to point out to the judge specifically any corrections or additions that are necessary. *Id.* This procedure is critical to ensure that any errors may be corrected immediately, before the jury commences its deliberations. *Id.* Accordingly, the defendant's failure to object is fatal to his claims of error with respect to these two jury instructions.

## V

### Evidence of Prior Acts with Fred Greene

■ Before trial, the state moved *in limine* to prevent defendant from eliciting any evidence relative to a sexual assault perpetrated upon Mary by Fred Greene in 1990, for which Greene was tried and convicted.[4] The defendant also moved *in limine* requesting the court to allow such evidence. He asserted that evidence of the assault "should have been admissible to show [Mary's] knowledge of sex acts or

---

4. Fred Greene was an adult neighbor of Mary's.

specific sex acts" that she had described in the present case. Both motions were heard after the jury was impaneled, but before opening statements.

The focus of the hearing on the motions was whether evidence of Mary's previous sexual activities was protected by the rape shield statute, G.L.1956 § 11–37–13, which permits a defendant to introduce evidence that the complaining witness engaged in prior sexual conduct, only upon prior notice and a specific offer of proof. If then the court finds the evidence to be relevant, it may be admitted. *State v. Dorsey,* 783 A.2d 947, 954 (R.I.2001) (citing *State v. Oliveira,* 576 A.2d 111, 113 (R.I.1990)). The trial justice ruled that the assault by Fred Greene occurred seven or eight years ago and was not relevant. The defendant renewed his request to question Mary about the incident during his cross-examination of Mary, with a similar result. It seems apparent from the transcripts that the basis of the court's ruling was the fact that Mary's allegation had been conclusively established by Fred Greene's subsequent conviction as being true. On appeal, defendant asserts that such evidence should have been admissible to demonstrate Mary's knowledge of specific sexual acts.

■■■ The rape shield statute was enacted "to encourage victims to report crimes without fear of inviting unnecessary probing into the victim's sexual history." *Dorsey,* 783 A.2d at 954 (citing *Oliveira,* 576 A.2d at 113). Evidence of the complaining witness's sexual history is admissible provided defendant makes a specific offer of proof and the trial justice finds the sexual history relevant. *Id.* This Court has held that evidence of false accusations by the complaining witness is admissible to negate the offense with which a defendant is charged. *Oliveira,* 576 A.2d at 113. Furthermore, "evidence of a complaining

witness'[s] withdrawal of a rape charge against a man other than the defendant is admissible as a challenge to the complaining witness'[s] credibility in the defendant's rape trial." *Id.* In *Oliveira,* 576 A.2d at 113, we also held that evidence of an eleven-year-old victim's accusations should have been admitted to demonstrate to the jury that she had other sources for her knowledge of the sexual acts she described, even though her allegations were neither proven false nor withdrawn.

"The admission or exclusion of evidence on grounds of relevancy is within the sound discretion of the trial justice and, absent a showing of abuse of this discretion, this Court will not disturb a ruling concerning the admissibility of evidence." *State v. Calenda,* 787 A.2d 1195, 1199 (R.I. 2002) (per curiam) (quoting *McBurney Law Services, Inc. v. Apex, Inc.,* 771 A.2d 911, 911–12 (R.I.2001) (mem.)). Here, we see no abuse of discretion in the trial justice's decision to exclude evidence of Fred Greene's prior assault on Mary.

Clearly, the proffered evidence had no relevance with respect to Mary's credibility. Fred Greene had been convicted, conclusively establishing the truthfulness of her accusations. It was not the function of the Superior Court to retry that case in an effort to impugn Mary's credibility. The assault occurred seven or eight years before the trial. Also, unlike the eleven-year-old victim in *Oliveira,* Mary was nineteen years old, albeit cognitively limited, at the time she testified. Therefore, the jury would have been less likely to draw the inference that she was so sexually naive she could not have fabricated the charge. *See, e.g., State v. Jacques,* 558 A.2d 706, 708 (Me.1989). Moreover, the trial justice allowed defendant to cross-examine Mary about two more recent sexual encounters, one of which involved allegations of sexual acts strikingly similar to those of which

Fred Greene had been convicted. We conclude, therefore, that the trial justice was well within his discretionary authority to exclude any reference to the sexual assault perpetrated by Fred Greene because such evidence was not relevant. Therefore it was cumulative, and was further "shielded" by § 11–37–13.

## VI

### Hearsay Statements of the Detective

 In 1995, when she was sixteen years old, Mary reported an incident in which she alleged that John, then fourteen years old, had sexually assaulted her. The defendant argues that the trial justice committed reversible error by permitting a Warwick police officer to testify that in March 1995 John stated to her, in the presence of his father, that he in fact did have consensual sexual contact with Mary. The trial justice admitted the hearsay statement under Rule 804(b)(3) of the Rhode Island Rules of Evidence as a statement against the declarant's penal interest.

On appeal, defendant faults the trial justice's ruling for several reasons which, he asserts, militate against the trustworthiness of the hearsay statements. Also, in a citation of supplemental authorities submitted after oral argument pursuant to Article I, Rule 16(e) of the Supreme Court Rules of Appellate Procedure, and supporting memorandum, he asserts that the admission of the statement violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution.

The exclusion or admission of any evidence relating to sexual contact between Mary and John was also a subject of the parties' motions *in limine*. The trial justice and counsel for both parties engaged in a fairly extensive discussion concerning the rape shield statute, and primarily the applicability of *Oliveira*, to Mary's allegations of assault by John. After much discussion concerning whether the sexual contact was consensual or the result of a forcible assault, the trial justice concluded the hearing on the motion by ruling as follows:

"So the ruling then is that I'll hold a hearing out of the hearing of the jury on the [John] incident to, first of all, see whether or not there is any allegation of sexual assault. If there is no allegation of sexual assault and it becomes consensual, then I won't permit it. If, however, I'm satisfied that the allegations were of sexual assault, then I will hear whatever the State wants to show that they were true, that they were, in other words, true. If there's anything that would tend to show that they're not true, I'll consider that."

The incident with John was indeed raised by defendant during his cross-examination of Mary. Outside the presence of the jury, the prosecutor represented that he was prepared to prove that Mary's allegations against John were true. Then in a *voir dire* examination, Mary testified that John touched her against her will, and penetrated her with his penis vaginally, orally, and attempted to penetrate her anally. Without permitting any additional witnesses or further argument from the state, the trial justice ruled that defendant would be permitted to question Mary about John in front of the jury.

Following Mary's testimony, the next witness called by the state was Sgt. Kerri Holsten of the Warwick Police Department. In the absence of the jury, the prosecutor said that the witness was being offered "to show when Mary said he did these things to her, there was proof that it happened." He further explained that Sgt. Holsten would testify that John ad-

mitted to having sex with Mary. John's statements were admissible, the prosecutor argued, as statements against his penal interest. Because there had been no showing that John was unavailable as a witness, as is required by Rule 804(b)(3), however, Sgt. Holsten was excused, subject to recall.

The parties later stipulated to John's unavailability, and Sgt. Holsten was recalled as a witness. Over defendant's hearsay objection, she testified that John initially denied that he even knew Mary. He later acknowledged that he did know her, and finally admitted to having sexual intercourse with her. He said he fondled her, penetrated her vaginally and tried to penetrate her anally, but was unsuccessful. The incident occurred, he said, on a large rock in a wooded area near a school.

On cross-examination, Sgt. Holsten testified that after making an oral statement, John started to make a written statement, but was interrupted by his father, and never completed it. The statement that John wrote admitted that he had been smoking pot and fondled Mary, but ended with the following sentence: "We were on the rock and we were kissing and nothing happened." Notwithstanding, the state's strenuous objection that this written statement was not against the declarant's penal interest, the trial justice admitted the statement as a full exhibit because it was being offered as "direct contradiction of [Sgt. Holsten's] testimony."

Rule 804(b)(3) provides in pertinent part:

"Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true."

In his brief, defendant argues that in light of John's written denial that sexual intercourse occurred at all and his assertion that the sexual contact that did occur was consensual, the oral statement he gave to Sgt. Holsten was not " 'so far contrary to [his] * * * criminal liability' that it could [be] said that he believed his oral statement to the detective." He further suggests that there is not a substantial likelihood that a reasonable person in John's position would believe the oral statements attributed to him by Sgt. Holsten. Further, he asserts that the trial justice failed to consider properly John's age, the lack of corroborating evidence, the small likelihood that he would be sent to the Training School, and the fact that the true penal authority present when he made the statements was not the police, but his father. He also contends that the trial justice erroneously found that John had been given his "Miranda" rights.

■ We first note that the probability that a fourteen-year-old juvenile would be subject to criminal liability is, indeed, remote, although, given the possible allegations of force or coercion and the mental disability of the victim, not entirely out of the realm of possibility in the event that the Family Court were to waive jurisdiction. A delinquency proceeding, however, is "one of civil, as opposed to one of criminal, nature." *In the Matter of a Child under Eighteen (18) Years of Age,* 730 A.2d 28, 29 (R.I.1999) (mem.) (quoting *In re John D.,* 479 A.2d 1173, 1176 (R.I. 1984)). Also, as the trial justice perceptively observed, the statements "may also be against an economic interest because the declarant doesn't know whether his subject is pregnant or not."

■ The admission of a statement under an exception to the hearsay rule is within the sound discretion of the trial justice and shall not be overturned unless clearly erroneous. *See State v. Torres*, 787 A.2d 1214, 1222 (R.I.2002) (admissibility of an excited utterance clearly within the trial justice's discretion and will not be overturned unless there is an abuse of that discretion); *Estate of Sweeney v. Charpentier*, 675 A.2d 824, 827 (R.I.1996) (admissibility of the residual exception to the hearsay rule clearly within the discretion of the trial justice and will not be overturned unless there was an abuse of that discretion resulting in prejudice).

The focus of our inquiry must be on whether the statements so far tended to subject John to civil or criminal liability that a reasonable person in his position would not have made them unless he believed them to be true. "The rationale for this exception is that people are not likely to make statements that are damaging to themselves unless they believe them to be true." Advisory Committee's Note to Rule 804(b)(3).

Here, there are factors that weigh on both sides of the issue. The conversation took place at the Warwick police station in the presence of his father pursuant to an investigation of an alleged sexual assault. Although there was no direct evidence that he had been given the Miranda warnings, the prosecutor made such a representation to the Court. Further, the sexual activities to which he admitted in the hearsay statements, even if consensual, would arguably subject him to liability for sexual penetration with a mentally-disabled individual under G.L.1956 § 11–37–2, as well

as for sodomy, under the then-existing version of G.L.1956 § 11–10–1.[5] Finally, as the trial justice noted, the statements were contrary to his pecuniary interest in the event that Mary became pregnant as a result of their sexual encounter.

On the other hand, it is not clear from the record that a reasonable fourteen-year-old, under investigation for an alleged sexual assault, would be mindful of the possibility that Mary might have had a mental disability sufficient to transform an act of consensual sex into a sexual assault. It is perhaps more likely that John's motive in admitting to having consensual sexual relations with Mary was to avoid penal liability, or at least to obtain more favorable treatment from the authorities. Such self-serving statements generally lack the trustworthiness that underlies the rule.

■ The test is not whether a declarant's statement could have subjected him to civil or criminal liability; rather it is whether the statement was sufficiently against the declarant's interest that a reasonable person in declarant's position would not have made the statement unless he believed it to be true. *See Williamson v. United States*, 512 U.S. 594, 603–04, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). "Rule 804(b)(3) is founded on the commonsense motion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Id.* at 599, 114 S.Ct. 2431.

In light of the circumstances of this case, we are not satisfied that a reasonable fourteen-year-old would be aware that his statements acknowledging consensual sexual contact with Mary could also subject

---

**5.** At the time of John's statement, G.L.1956 § 11–10–1 provided:

"**Abominable and detestable crime against nature.**—Every person who shall be convicted of the abominable and detestable crime against nature, either with mankind or with any beast, shall be imprisoned not exceeding twenty (20) years nor less than seven (7) years."

him to penal liability, or that he might incur any financial responsibility as a result thereof. Accordingly, we are unable to conclude that John's oral statements to Sgt. Holsten were so far contrary to his interest as to be admissible under Rule 804(b)(3).

■■ We are satisfied, however, that their admission was harmless error beyond a reasonable doubt. The defendant does not identify any prejudice from the admission of these statements. In fact, it was defendant who first introduced to the jury, over the state's objection, evidence of Mary's sexual encounter with John during his cross-examination of Mary. He advanced three reasons to support his contention that evidence of the previous encounter between Mary and John was relevant. First, he argued, it established the fact that Mary spoke to the police during the same period when she alleged that defendant was abusing her, and yet she failed to make a complaint against him. Secondly, he asserted that it demonstrated her prior knowledge of the "same exact [sexual] acts that took place in this case." And, thirdly, he maintained that it was admissible to challenge effectively her credibility.

Rather than undermining these assertions, however, the admission of John's hearsay statements arguably buttressed them. Sergeant Holsten's testimony clearly demonstrated that there was a continuing police investigation supporting defendant's claim that Mary had an opportunity to file a complaint against her father. John's admission of sexual relations with Mary supported defendant's contention that she had other sources of sexual knowledge. Further, by asserting that the relations were consensual, his statements contradicted Mary's allegations that they were forcible. After reviewing the record, we are satisfied that the admission of John's statements to Sgt. Holsten was harmless error.

We next turn to defendant's argument that the admission of John's hearsay statements violated the confrontation clause of the Sixth Amendment. "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him.'" *Crawford v. Washington,* — U.S. ——, ——, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004) (quoting U.S. Const. Amend. VI). This issue was not raised at trial, and indeed was first raised in defendant's post-oral argument citation to supplemental authorities.

The defendant cites the recent Supreme Court opinion of *Crawford* for the proposition that testimonial statements of witnesses absent from trial are admissible only when the declarant is unavailable, and only when the defendant has had a previous opportunity to cross-examine. The express effect of *Crawford* is to overrule the rationale of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) that an unavailable witness's statement against a criminal defendant is admissible if the statement bears "adequate 'indicia of reliability.'" *Crawford,* — U.S. at ——, 124 S.Ct. at 1355 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). Such a test is satisfied if the statement falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Id.*

■■ Generally, this Court will not consider questions that are not properly presented in the court below. *See State v. Burke,* 522 A.2d 725, 731 (R.I.1987). Under certain circumstances, however, this Court will review issues implicating basic constitutional rights. These circumstances are:

"First, the error complained of must consist of more than harmless error. Second, the record must be sufficient to permit a determination of the issue. * * * Third, counsel's failure to raise the issue at trial must be due to the fact that the issue is based upon a novel rule of law of which counsel could not reasonably have known at the time of trial." *State v. Ramsey*, 844 A.2d 715, 719 (R.I. 2004) (quoting *State v. Smith*, 766 A.2d 913, 919 (R.I.2001)).

Because we conclude that the error was harmless, however, we need not address the *Crawford* issue within the context of this case.

## VII

### Admission of a Letter Written by Defendant to Mary's Younger Sister

 The defendant argues that state's exhibit No. 7, a handwritten letter from defendant to his youngest daughter, was unduly prejudicial because the letter mentions an unrelated second-degree child abuse charge. The defendant asserts that this error could not be cured with a jury instruction. The defendant argues that the reference violated Rule 404(b) of the Rhode Island Rules of Evidence, which precludes evidence of other crimes, wrongs, or acts to prove a defendant's character in order to show that said crimes, wrongs or actions conformed to that character.

 "[T]he admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *State v. Hazard*, 785 A.2d 1111, 1120 (R.I. 2001) (quoting *Graff v. Motta*, 748 A.2d 249, 252 (R.I.2000)). "As a general rule, evidence that shows or tends to indicate that the accused has participated in a crime for which he or she is not on trial,

even if it is the same type of crime, is irrelevant and inadmissible." *State v. Gallagher*, 654 A.2d 1206, 1210 (R.I.1995) (citing *State v. Cardoza*, 465 A.2d 200, 202 (R.I.1983)). The rationale behind this policy is to alleviate confusion of the issues, unfair surprise, and prejudice to defendant. *Id.* (citing *State v. Colvin*, 425 A.2d 508, 511 (R.I.1981)). Evidence of other crimes may be admitted, however, if it tends to establish defendant's "guilty knowledge, intent, motive, design, plan, scheme, system, or the like" relative to the offense charged. *Id.* (quoting *State v. Lemon*, 497 A.2d 713, 720 (R.I.1985)). "The decision on whether evidence of other crimes is relevant to a permissible purpose is left to the sound discretion of the trial justice." *State v. Breen*, 767 A.2d 50, 58 (R.I.2001). If the trial justice finds that the probative value outweighs the potential for unfair prejudice, and chooses to admit the evidence, a specific cautionary instruction also must be administered to explain the limited purpose for which the jury may consider it. *State v. Brown*, 626 A.2d 228, 233 (R.I.1993).

State's exhibit No. 7 was a handwritten letter mailed from defendant to his youngest daughter advising her:

"When you are summonsed to show up in court for 2nd DEG. Child Abuse charge, you could probably just, ignore it, not show up, and they drop charges. I'll check. You'll definitely have to show up to talk to [Mary], Though I anticipate that they will drop charges then, also, with refusal to testify.

Dad"

At trial, defense counsel objected to the introduction of this exhibit, asserting that the reference to the "2nd DEG. Child Abuse," was admitted as evidence of defendant's bad character. The trial justice found that the jury could not distinguish

between sexual assault and child abuse, and thus overruled defendant's objection. On appeal, defendant argues that child abuse charges are legally distinguishable from sexual assault and thus the child abuse charges should have been redacted because it may have confused the jury.

The state asserts that the exhibit was introduced because it was "probative evidence of consciousness of guilt of the crimes charged." The defendant does not contest the admissibility of the letter for this purpose; rather, he argues, that the "2nd degree child abuse" charge should have been redacted.

In this instance, there was no prejudice shown from the introduction of the letter referring to the charges of abuse. We note that the jury acquitted defendant of the second-degree sexual assault and simple assault charges involving his youngest daughter. Moreover, we conclude that the note was not introduced to prove bad character or as evidence of a prior bad act, but rather to prove defendant's consciousness of his guilt of the crimes charged. See, e.g., State v. Ricci, 639 A.2d 64, 67 (R.I. 1994). The probative value of the statement outweighed any danger of undue prejudice to defendant.

We additionally note that the trial justice gave defense counsel the option of a cautionary instruction; defense counsel refused it. The court nonetheless instructed the jury at the end of the case:

"In the course of this trial, you heard testimony that the defendant here engaged in some conduct which is not the basis for the charges for which he is now on trial. That testimony was offered to you for a limited purpose of showing some motive or intent or preparation or knowledge or absence of mistake or accident in connection with the conduct of the defendant which the State contends is the basis for the charges against him.

As with all such testimony, it has only such weight as you see fit to give it for that purpose. You must not, however, give that testimony any weight as evidence tending to prove that the defendant had some propensity or disposition to commit the crimes with which he is charged here. In other words, you must not conclude that just because the defendant engaged in the conduct testified to, he must have committed the crimes for which he is here on trial."

■ An attempt to intimidate or dissuade a witness from testifying is directly admissible and relevant to show consciousness of guilt on defendant's part. State v. Burke, 529 A.2d 621, 626 (R.I.1987) (citing State v. Payano, 528 A.2d 721 (R.I.1987)). We are satisfied that this letter could reasonably be interpreted as an attempt by the father to persuade his youngest daughter to drop the charges against him. We therefore conclude that admission of this evidence was within the discretion of the trial justice.

## VIII

### Doctor McCue's Testimony

■ The defendant next asserts that the hearsay testimony of Dr. Bridget McCue, an ob-gyn resident physician at Women & Infants Hospital, was improperly admitted by the Superior Court under Rule 803(4) as a statement for purposes of medical diagnosis or treatment.

On September 24, 1996, the same day that Mary first spoke to the school psychologist, Dr. McCue of Women & Infants Hospital examined Mary. First, a thorough history of the patient was taken, as per hospital procedure, to document what transpired before the hospital visit, and then a physical exam was conducted. Mary complained to Dr. McCue of "pain down there" and "pain in her bottom," referring to her

vaginal/rectal area. At trial, the state asked Dr. McCue whether Mary "indicate[d] to her what acts had happened to her which caused her that pain?" Defense counsel objected to the admission of Mary's hearsay declaration to Dr. McCue. The state then conducted an *in limine voir dire* of Dr. McCue, in which defense counsel asserted that Dr. McCue's testimony about Mary's statement to her should not be admitted unless "there's an exception as medical purposes or [if] she was treating her for medical purposes." The trial justice concluded that Dr. McCue's subsequent treatment of Mary with antibiotics as prophylaxis against a sexually transmitted disease was sufficient foundation to allow Dr. McCue to present hearsay testimony of Mary's description of what caused her pain, under the Rule 803(4) medical exception.

At trial, Dr. McCue read to the jury from the history she had taken from Mary at the time of the exam, including in pertinent part:

> "On Saturday, he put his penis in the front and the back. Monday, he put his penis in the front and the back. He hurt me because he put it all the way in."

Doctor McCue additionally explained that at this point in the oral history, Mary could not find words for what happened next, but Dr. McCue opined that Mary was describing "ejaculation."

The defendant asserts that Dr. McCue's testimony "merely assigned fault by explicitly describing a sexual action, and had nothing to do with her antibiotic treatment of sexually transmitted diseases." The defendant asserts that precedent of this Court precludes the admission of this testimony, and cites to *State v. Pina*, 455 A.2d 313, 315 (R.I.1983), which provides in pertinent part:

> "[I]n positing the standard as to the admissibility of such statements * * * the test is not determining merely whether or not the statements are part of a case history. Rather, 'admission or rejection will hinge on whether what has been related by the patient *will assist or is helpful in the diagnosis or treatment of his ailments.*' *State v. Contreras*, 105 R.I. [523,] 534–35, 253 A.2d [612,] 619 [(R.I.1969)]. If such statements narrate details not connected with either diagnosis or treatment, they will be inadmissible unless they fall within another hearsay exception. *Id.*

> "When statements as to causation enter the realm of fixing fault, it is unlikely that the patient or the physician consider them related to diagnosis or treatment. *Sullivan v. United States*, 404 A.2d 153, 159 n. 11 (D.C.App.1979). In the circumstances where fault is an issue, statements of causation do not hold the same reliability of truthfulness and are properly excluded." (Emphasis added.)

The defendant asserts that "investigating the transmission of a sexually transmitted disease is designed to assign fault and is not for the purposes of treatment."

We first reiterate our standard of review discussed above that the admissibility of a statement under the medical diagnosis hearsay exception is within the sound discretion of the trial justice and shall not be overturned unless clearly erroneous.

We also note the similarities in circumstances surrounding the statements Mary made to Dr. McCue and those she made to the school psychologist. As with the psychologist, Mary did not seek out Dr. McCue for the purposes of medical diagnosis or treatment. Rather, she was accompanied by Det. Lori–Ann Molloy of the Warwick Police Department to Women & Infants Hospital for the express purpose of

a forensic examination. Doctor McCue testified that she was asked to perform an assault, or rape (examination) kit that she described as a physical exam after a physical assault.

There is, however, a vast difference between a conversation with a school psychologist in the school office and a physical examination by a doctor in a hospital. Mary's complaints of "pain down there," in the latter situation, do evince a "strong motivation to be truthful" that provides the rational underpinning of Rule 803(4). There also was evidence that Mary had made a similar complaint to the police detective before she was taken to the hospital.

Clearly, the fact that Mary recently had both vaginal and anal sex multiple times was pertinent in the diagnosis of the cause of her pain in the pelvic area. On direct examination, Dr. McCue did not testify about the identity of the person Mary had sex with, only to the fact that she recently had sexual intercourse.[6] It is similar to a situation in which a victim of a car accident is treated by a physician: the fact that injuries were suffered in a car accident is pertinent for diagnostic purposes, when other "non-diagnostic" facts such as the color of the car or a description of the driver may not be. In the case at hand, it was reasonable for the trial justice to conclude that Mary would not lie to the doctor about the source or potential cause of her pain, and that the statement aided Dr. McCue in her diagnosis. Moreover, Dr. McCue did, in fact, treat Mary by prescribing antibiotics. We thus conclude that the trial justice did not abuse his discretion by admitting this hearsay testimony under Rule 804(3).

## IX

### Custodial Chain of Evidence

██ The defendant next argues that the trial justice improperly admitted certain physical evidence without showing a continuous chain of custody, and thus the Superior Court erred in permitting Jennifer Finch, a forensic scientist from the Department of Health, to testify that the tests that she performed on pubic hair samples revealed the presence of semen.

A review of the record indicates that on September 24, 1996, speculum samples were taken from Mary's vaginal and rectal areas as part of the "rape-kit" examination administered by Dr. McCue, and samples of pubic hairs were taken from Mary's body and her clothing by Nurse Laura Tetrault.[7] Detective Molloy testified that she observed Nurse Tetrault take the hair and swab samples from Mary's pubic region, and that those samples were forwarded to the Department of Health. Rhode Island State Forensic Scientist Jennifer Finch testified that she received the sexual assault evidence collection kit from Mr. Menard of Women & Infants Hospital. At trial, defendant objected to the results of the tests performed on these samples based on a lack of foundation and insufficient chain of custody. The judge overruled the objections, saying:

> "the burden is on the person who contends that there's been some break in the chain of custody from the time a sample is collected until the time it gets analyzed. And, I'm satisfied in this case that the grounds are not well founded."

The defendant now charges reversible error based on this alleged insufficiency in

---

6. Doctor McCue did not identify defendant as the perpetrator until pressed on cross-examination by defendant's attorney.

7. The state offered to call Nurse Tetrault to testify, but the trial justice refused it as unnecessary.

the chain of custody between Nurse Tetrault and the Rhode Island Department of Health.

▮▮▮▮ We again reiterate that "the admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *Hazard*, 785 A.2d at 1120 (quoting *Graff*, 748 A.2d at 252). It is well established that the "showing of continuous chain of custody is relevant only to the weight of the evidence, *not to its admissibility*." *State v. Cohen*, 538 A.2d 151, 154 (R.I.1988). To admit physical evidence, a party must show only the reasonable probability that no one has tampered with the exhibit. *See State v. Reyes*, 673 A.2d 454, 457 (R.I.1996) (per curiam) (citing *State v. Bracero*, 434 A.2d 286, 290 (R.I. 1981)); *Cohen*, 538 A.2d at 154. After reviewing the record, we conclude that the state satisfied its burden of establishing a reasonable probability that no one tampered with the evidence. The defendant did not offer any evidence to rebut this showing. Accordingly, the evidence on the chain of custody in this case was sufficient to establish admissibility.

## X

### Defendant's Requested Jury Instruction

▮▮▮ The defendant next asserts that the trial justice erred by refusing to instruct the jury specifically that:

"The ability of a witness to remember accurately and to relate the events in question is of crucial importance to your assessment of that witness' credibility."

The trial justice declined to do so, stating that such an instruction would be a comment on the evidence. The defendant asserts that this refusal "impermissibly protected Mary's cognitive and temporal limitations from a valid and important legal instruction for the jury's due consider-

ation." A review of *State v. Manocchio*, 496 A.2d 931, 934–35 (R.I.1985), precedent cited by defendant, reveals that this Court established only that the ability to *cross-examine a witness* about the accuracy of his or her memory was of crucial importance. It did not provide any guidance about jury instructions. *See State v. Manocchio*, 523 A.2d 872, 874 (R.I.1987) (On remand, the Court reaffirmed importance of ability to cross-examine a witness about the accuracy of his or her memory).

▮▮▮▮ It is well established that "[t]he charge given by a trial justice need only 'adequately cover [] the law.' " *State v. Hazard*, 797 A.2d 448, 469 (R.I.2002) (quoting *State v. Krushnowski*, 773 A.2d 243, 246 (R.I.2001) (per curiam)). " 'On review, [this Court] examine[s] the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them * * *.' " *Hazard*, 797 A.2d at 469 (quoting *Krushnowski*, 773 A.2d at 246). "[A] trial justice's refusal to grant a request for jury instruction is not reversible error if the requested charge is fairly covered in the general charge." *State v. Price*, 706 A.2d 929, 934 (R.I.1998) (quoting *Taylor v. Allis Chalmers Corp.*, 610 A.2d 108, 109 (R.I.1992) (mem.)).

The trial justice issued the following instruction to the jury:

"You can consider the capacity and opportunity any witness had to perceive and understand the matters the witness observed at the time the witness claimed they happened, *the witness' ability to remember those matters and the witness' ability to narrate them at trial.* That may not be an easy task for you with regard to a witness in this case. But, you must weigh the testimony of each witness as that witness comes to you and as you listened to that testimony." (Emphasis added.)

We conclude that the trial justice's instruction was sufficient and we hold that the requested instruction was fairly covered in the given instruction.

## XI

### Due Process Rights

■■■■ The defendant argues that his due process rights were violated because the trial justice did not adequately instruct the jury on the element of sexual gratification, and because the state failed to prove every element of the first-and second-degree sexual-assault counts beyond a reasonable doubt in violation of the United States Supreme Court standard set forth in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

First, defendant contends that the trial justice did not properly instruct the jury on the sexual gratification element of first-degree sexual assault. The defendant argues that the instruction was said "in such brevity and outside of the context of his instructions as to first degree sexual assault that it was ineffectual." The defendant further complains that the trial justice "never explained anything about sexual gratification to the jury or what he meant by 'proffer a certain intent in the mind of the defendant.'"

The trial justice instructed:

"I might tell you that with regard to the first three counts that charge sexual assault in the first degree, in each case you must find that the State has proved beyond a reasonable doubt that the fellatio or the intercourse, whether sexual or anal, *was for the purpose of sexual arousal or sexual gratification or sexual assault.* In other words, it is necessary to proffer a certain intent in the mind of the defendant as I've explained that to you." (Emphasis added.)

We first note that the record demonstrates defendant did not properly preserve this issue for appeal. As stated before, the "failure to object to a jury instruction precludes review of the instruction on appeal." *Pacheco*, 763 A.2d at 979. Nevertheless, if a timely objection had been made and we were to review the issue substantively, we would conclude that the trial justice sufficiently instructed the jury on this charge. We reiterate that "[t]he charge given by a trial justice need only adequately cover [] the law." *Hazard*, 797 A.2d at 469 (quoting *Krushnowski*, 773 A.2d at 243). The trial justice offered an instruction directing the jury that to find first-degree sexual assault, the jury must find that the defendant acted for the purpose of sexual gratification. Thus, we conclude that the jury instruction given was not clearly erroneous.

The defendant also contends that the evidence presented by the state did not prove every element of the first-or second-degree sexual assault counts beyond a reasonable doubt, violating the constitutional requirements set forth in *In re Winship*, and thus should be vacated and remanded for new trial. In *In re Winship*, 397 U.S. at 364, 90 S.Ct. 1068, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution denies the state the power to deprive the accused of liberty unless the state proves every element necessary to constitute the crime charged beyond a reasonable doubt.

■■■■ It is unclear which element defendant refers to in this assertion, therefore, we interpret it as a challenge to the general sufficiency of the evidence for his first-degree and second-degree sexual assault convictions. "[A] challenge to the sufficiency of the evidence is properly framed in terms of a challenge to the trial justice's denial of the defendant's motions for judg-

ment of acquittal and new trial." *State v. Mercado,* 635 A.2d 260, 262 (R.I.1993) (citing *State v. Collazo,* 446 A.2d 1006, 1011–12 (R.I.1982)). Because defendant did not move for a judgment of acquittal on the aforementioned charges, this Court must restrict its review to the motion for new trial. *See State v. Portes,* 840 A.2d 1131 (R.I.2004).

## XII

### Motion for New Trial

 Lastly, defendant asserts that the trial justice abused his discretion by denying defendant's motion for a new trial, in light of Mary's substantial inconsistencies in her testimony.

 In ruling on a motion for a new trial, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Rieger,* 763 A.2d 997, 1001–02 (R.I.2001) (quoting *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994)). The trial justice must consider the evidence in light of the charge to the jury, determining his or her own opinion of the evidence, weighing credibility and choosing among conflicting testimony, and must determine whether he or she would have reached a different result than that reached by the jury. *Id.* "Provided that the trial justice has 'articulated an adequate rationale for denying a motion,' a trial justice's ruling on a new trial motion is entitled to great weight." *Id.* at 1002 (quoting *State v. Bleau,* 668 A.2d 642, 646 (R.I.1995) and citing *State v. Dame,* 560 A.2d 330, 332 (R.I.1989)). "A trial justice's ruling on a new-trial motion will not be overturned unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *State v. Bolduc,* 822

A.2d 184, 187 (R.I.2003) (per curiam) (citing *State v. Salvatore,* 763 A.2d 985, 991 (R.I.2001)).

After an independent review of the evidence in this case, the trial justice weighed the credibility of the witnesses and other material evidence and determined that his verdict as a juror was the same as that reached by the jury. In this case, the central issue was whether Mary was a credible witness. The trial judge considered the inconsistencies and acknowledged that Mary suffered from an impairment of her intellectual abilities and had cognitive and communicative limitations. The court accepted Mary's testimony as credible, saying in part:

> "This is a case where the credibility of the principal witness, the complaining witness, cannot even be remotely assessed from the bare transcript of the intelligible words she uttered. One had to be here watching and listening to realize that [Mary] was telling the truth."

The trial justice added:

> "[Mary] described a sexual horror story of her growing up years at the hands of her father. Since the Court accepts as truthful everything she did and can readily further find that what she said proves the guilt of the defendant of each of the five counts on which he was found guilty beyond a reasonable doubt, there is absolutely no reason to retry this case."

We conclude that the trial justice did not overlook or misconceive any material evidence and was not otherwise clearly wrong in his assessment of the evidence. We therefore affirm the judgment of the trial justice denying the defendant's motion for a new trial.

## Conclusion

For the reasons stated herein, we affirm the judgment of conviction of the Superior Court, to which we return the papers in this case.

FLANDERS, Justice, concurring.

I respectfully disagree with the majority's analysis of whether John's hearsay statement about his consensual sexual contact with Mary, the complaining witness, was inadmissible as a statement against John's interest within the meaning of Rule 804(b)(3) of the Rhode Island Rules of Evidence. In my opinion, John's alleged oral admission to Sergeant Kerri Holsten of having had consensual sex with a mentally incapacitated sixteen-year old was definitely against his interest because such a statement "so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true." R.I. R. Evid. 804(b)(3).

As the advisory committee's note to Rule 804(b)(3) indicates, "[t]o be admissible, the statement must actually have *a potential* for damaging the declarant's pecuniary, proprietary, penal, or legal interests." (Emphasis added.) The majority acknowledges that "the sexual activities to which [John] admitted in the hearsay statements, even if consensual, would arguably subject him to liability for sexual penetration with a mentally disabled individual under [G.L.1956] § 11–37–2, as well as for sodomy, under the then-existing version of [G.L.1956] § 11–10–1." The majority also concedes that, "as the trial justice noted, the statements were contrary to

[John's] pecuniary interest in the event that Mary became pregnant as a result of their sexual encounter."

Where I part company with the majority is when it indicates that "it is not clear from the record that a reasonable fourteen-year-old, under investigation for an alleged sexual assault, would be mindful of the possibility that Mary might have had a mental disability sufficient to transform an act of consensual sex into a sexual assault." Respectfully, I do not believe that such knowledge on the declarant's part is a prerequisite to admitting the statement in question under Rule 804(b)(3).

In assessing whether a statement was truly against the declarant's interest, courts have employed an objective test to determine—as the text of Rule 804(b)(3) requires—whether "a *reasonable person* in the declarant's position would not have made the statement unless the declarant believed it to be true." (Emphasis added.) *See Taylor v. Commonwealth*, 821 S.W.2d 72, 75 (Ky.1990); *State v. Kiewert*, 135 N.H. 338, 605 A.2d 1031, 1034 (1992); *City of Dayton v. Combs*, 94 Ohio App.3d 291, 640 N.E.2d 863, 872 (1993). The "usual standard" employed in determining whether the statement was against the declarant's interest focuses on an objective "reasonable-person" standard, rather than a subjective focus on the actual state of mind of the declarant when he or she made the statement. 2 *McCormick on Evidence* § 319(e) at 329 (John W. Strong, 5th ed.1999) (although "[i]n strictest logic, attention * * * should focus on the actual state of mind produced in the declarant" the prevailing standard is an objective "reasonable-person" test).[8] In *Kiewert*,

---

8. Although some courts have employed a subjective analysis for determining the against-interest nature of a declarant's out-of-court statement against interest, *see Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir.1985)

("Hearsay under the declaration against interest exception is unreliable unless the declarant is aware at the time of making the statement that it is against his interest."); *People v. Morgan*, 76 N.Y.2d 493, 561 N.Y.S.2d 408,

the New Hampshire Supreme Court explained the reason for employing an objective standard:

> "Rule 804(b)(3) clearly sets forth an *objective standard* for determining the against-interest nature of the statement. * * * This standard was adopted for practical reasons; because the initial threshold requirement for the application of the rule is that the declarant be unavailable, there will rarely be evidence of what the declarant thought." *Kiewert*, 605 A.2d at 1034–35. (Emphasis added.)

Thus, Rule 804(b)(3) does not require a subjective determination of whether the declarant was, as the majority puts it, "mindful of the possibility that Mary might have had a mental disability sufficient to transform an act of consensual sex into a sexual assault."

Employing this objective standard, I believe that a reasonable fourteen-year old in John's position would not have admitted to engaging in vaginal and attempted anal intercourse with a mentally impaired sixteen-year old—even if such behavior could somehow qualify as "consensual"—unless he believed such a statement was true. To constitute a crime under G.L.1956 § 11–37–2(1), the accused must have engaged in sexual penetration with another person and he or she must "know[ ] or ha[ve] reason to know that the victim is mentally incapacitated, mentally disabled, or physically helpless." The state argued to the

trial justice that John gave his statement to the police in connection with a police investigation into allegations that Mary was mentally incapacitated and therefore unable to consent to sexual intercourse. Sergeant Holsten of the Warwick Police Department testified at trial that after initially denying that he even knew Mary, John eventually admitted to having sexual intercourse with her. This admission occurred while Sgt. Holsten was questioning John, at the police station, in the presence of his father. Sergeant Holsten testified that John's father then terminated the police interview with his son, citing legal advice that he had obtained as the reason for doing so. In this context, a reasonable teenage boy in John's position would know that admitting to such actions—in front of the police, not to mention his father—could subject him not only to penal or criminal liability, but also to all sorts of other adverse consequences, not the least of which is civil liability, a delinquency adjudication,[9] and the potential for him and his family to face claims seeking money damages for such alleged misconduct on his part.

In any event, under our familiar raise-or-waive rule, the defense waived the argument that John's statement was not against his interest because the evidence allegedly failed to show that a reasonable fourteen-year old in John's position would not have known or have reason to know that Mary was mentally disabled, as § 11–37–2(1) requires. Defense counsel object-

---

562 N.E.2d 485, 487 (1990) (declarant must have been aware when he or she made the statement that it was contrary to his or her penal interest); *Lilly v. Commonwealth*, 255 Va. 558, 499 S.E.2d 522, 533 (1998) ("the statement's admissibility is based upon the subjective belief of the declarant that he is making admissions against his penal interest") *rev'd on other grounds, Lilly v. Virginia*, 527 U.S. 116, 140, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), I conclude that, given the

"reasonable person" language of Rule 804(b)(3) of the Rhode Island Rules of Evidence, the better reasoned decisions are those that use the objective test.

9. This Court has applied the Rhode Island Rules of Evidence governing hearsay exceptions to juvenile delinquency proceedings. See *In re Andrey G.*, 796 A.2d 452, 456 (R.I. 2002) (per curiam).

ed to the admission of John's oral statement only on the basis that John asserted the sexual intercourse was consensual, and that therefore his statement was not against his penal interest. Defense counsel never objected to the admissibility of John's oral statement on the ground that the prosecutor failed to establish that John was "mindful of the possibility that Mary might have had a mental disability sufficient to transform an act of consensual sex into a sexual assault." Consequently, the defendant failed to preserve this contention at trial as a basis to reverse on appeal the trial justice's decision to admit the testimony into evidence.

In addition, as the advisory committee's note to Rule 804(b)(3) ("Exception (3): Statements Against Interest") indicates, "[t]o be admissible, the statement must actually have a *potential* for damaging the declarant's pecuniary, proprietary, penal, or legal interests." (Emphasis added.) Thus, all that is necessary to satisfy this aspect of the rule is that the declarant's statement have a *potential* to damage his or her interests, including the declarant's interest in avoiding potential civil liability. Under these circumstances, I would hold that a reasonable fourteen-year old's admission that he engaged in sexual intercourse with a mentally disabled classmate certainly had "the potential for damaging the declarant's pecuniary, proprietary, penal, or legal interests," regardless of whether the record reflects any knowledge on his part about the classmate's mental disability.

Also, I believe the Court construes Rule 804(b)(3) too narrowly when it insists that a reasonable fourteen-year old would have had to be aware that the statement in question could subject him to penal liability or to some sort of financial responsibility. Rule 804(b)(3) does not require that the statement in question be contrary to the declarant's penal or financial interest. Rather, the rule is broader, also embracing statements that merely subject the declarant to civil liability, such as a delinquency adjudication, or that are otherwise against the declarant's pecuniary, proprietary, or legal interests. Indeed, the hearsay exception for statements against the declarant's interest "reaches a wide range of statements that directly and immediately impair or qualify the pecuniary or proprietary interest of the speaker," including statements that tend to subject the speaker to tort liability, to loss of employment, or to loss of employment opportunities. 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence,* § 497 at 824–25 (2d ed.1994). In short, I believe the Court takes too-narrow a view of the rule when it insists that a reasonable fourteen-year old would have had to be aware that the statement in question could subject him to penal liability or to some sort of financial responsibility. The rule is not so narrowly drawn and the Court errs, in my opinion, when it effectively redrafts it by interpretation to focus solely on the potential penal and financial consequences of the admission and on whether a reasonable fourteen-year old would have been aware of such consequences.

In any event, I would hold that John's statement was potentially damaging to his interests in avoiding potential criminal and civil liability for having sex with a mentally disabled classmate and then lying about it to the police. To constitute a crime under § 11–37–2(1), the circumstances must be such that the accused engaged in sexual penetration with his or her accuser and that he "knows or has reason to know that the victim is mentally incapacitated, mentally disabled, or physically helpless." This is because such a person lacks the ability to consent to the intercourse. Because John could potentially be found guilty of this offense even if Mary had

"consented" to engage in sexual intercourse, his admission that he did engage in the sex acts Mary described had the potential to compromise his interest in avoiding potential civil and criminal liability for engaging in such acts. Moreover, regardless of John's awareness of Mary's mental disability, as the trial justice observed, the statement was contrary to John's pecuniary interest in the event that Mary became pregnant as a result of the sexual encounter.

Lastly, it was also against John's interest in avoiding potential criminal and civil liability to give contradictory oral and written statements to the police about what happened with Mary. Martha Stewart is only the latest in a long list of defendants who have been accused—let alone convicted—of obstructing justice by lying to the authorities who were investigating their alleged misconduct. For these reasons, I would hold that John's oral statement admitting to sexual intercourse with Mary— one that contradicted not only his previous verbal denial of even knowing Mary, but also his later written statement ("we were kissing and nothing happened")—was potentially damaging to his penal and civil interests; that a reasonable fourteen-year old in John's position would not have made such an admission unless it was true; and that, therefore, the trial justice did not commit reversible error when he ruled that John's oral statement to Sgt. Holsten was admissible under Rule 804(b)(3).

Moreover, as the Court acknowledges, the admission into evidence of such a hearsay statement at trial under an exception to the hearsay rule lay within the sound discretion of the trial justice. *See, e.g., State v. Verrecchia*, 766 A.2d 377, 390 (R.I.

2001); *State v. Harding*, 740 A.2d 1270, 1273 (R.I.1999) (per curiam). Thus, this Court should not overturn such a decision on appeal unless the trial justice's decision to admit or exclude such evidence was clearly erroneous. *Verrecchia*, 766 A.2d at 390. I am hard pressed to say that the trial justice's admission of such evidence— which undeniably tended to subject the declarant to civil liability at a minimum— was clearly erroneous, even if, as the majority concludes, there was no clear evidence in the record that a reasonable person in John's position would be aware that Mary was mentally disabled.

I also believe that the trial justice properly admitted Sgt. Holsten's testimony of John's oral statement pursuant to the curative-admissibility doctrine. The curative-admissibility doctrine, under certain circumstances, provides that "if one party offers an inadmissible fact that is received * * * the opponent afterwards may offer similar facts whose only claim to admission is that they negative, explain, or counterbalance the prior inadmissible fact." 1 John Henry Wigmore, *Evidence* § 15 at 731 (rev. ed. Peter Tillers 1983). Here, it was defense counsel who first elicited testimony from Mary on his cross-examination of her concerning her allegations of previous sexual abuse by John. What the jury did not hear during this cross-examination, however, was that John admitted orally to Sgt. Holsten the details of Mary's allegations: namely, that he had in fact had sexual intercourse with her. Defense counsel suggested, in his argument in opposition to the state's motion *in limine* to prevent the defense from offering this evidence, that the evidence bore directly on Mary's credibility.[10] The introduction of

10. In arguing against the state's motion *in limine,* defense counsel noted: "[W]e believe that evidence of a complaining witness' prior allegations of sexual assault may be admitted to challenge effectively the complaining witness' credibility even if those allegations were not proven false or withdrawn." And again, in his closing statement, defense counsel sum-

this evidence suggested that Mary had made the same type of sexual-abuse allegations that she made against her father against at least one other person (John), and that she did so falsely. This is especially true when, as here, the jury was able to observe Mary's difficulty relating the timing and sequence of the alleged incidents of abuse by her father.

In *State v. Burke*, 529 A.2d 621, 631 (R.I.1987), this Court recognized the doctrine of curative admissibility. In *Burke*, defense counsel elicited, on cross-examination of a state's witness, a statement that a third person approached and threatened the witness. *Id.* at 630. On redirect, the prosecution questioned this witness about the contents of this conversation. *Id.* This Court held that "[u]nder the principle of curative admissibility * * * the prior introduction of inadmissible evidence for a certain class of facts permits the trial justice to allow the introduction of answering inadmissible evidence pertaining to the same matter." *Id.* at 631. The Court went on to note, "[w]hen * * * one party seeks the admission of inadmissible evidence without objection by his opponent, the allowance of answering evidence is within the sound discretion of the trial justice." *Id. See also State v. Brash*, 512 A.2d 1375, 1379 (R.I. 1986) (defense did not waive objection to hearsay evidence simply because defense counsel elicited additional hearsay answers from same witnesses on cross-examination).[11] A court may apply curative admissibility, however, even when, as here, there was an objection to the initial introduction of the evidence. 1 Wigmore, § 15 at 731.

Indeed, "the better rule permits use of the principle of curative admissibility even if an objection has been made in the first instance." *Id.*

Thus, the curative-admissibility doctrine can be an alternate ground for admitting hearsay evidence that otherwise would be inadmissible under an exception to the hearsay rule. *State v. Armentrout*, 8 S.W.3d 99, 111 (Mo.1999) (en banc). In *Armentrout*, the defendant, who was charged with a murder—the motive for which was robbery—elicited hearsay testimony during cross-examination of a state's witness. *Id.* The state's witness testified on cross-examination that the deceased victim voluntarily gave the defendant her checkbook. *Id.* The court employed the curative-admissibility doctrine, allowing the state to admit the testimony of a different witness who testified that the deceased victim said she was afraid that the defendant would kill her if she did not continue to fund his illegal drug purchases. *Id.* at 103, 111. The court held that "where a defendant has injected an issue into the case, the state may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *Id.* at 111 (quoting *State v. Weaver*, 912 S.W.2d 499, 510 (Mo.1995) (en banc)). *See also State v. Martin*, 241 Kan. 732, 740 P.2d 577, 582–83 (1987) (admission of declarant's out-of-court statement to police upheld as admissible "in light of [defendant] opening up the issue on cross-examination").

---

marized the inconsistencies between John's written statement, John's oral statement to Sgt. Holsten and Mary's testimony about the incident, observing "[h]er [Mary's] testimony is not reliable" and "[i]t doesn't make sense because it didn't happen."

11. But see *State v. Mallett*, 600 A.2d 273, 277 (R.I.1991) holding that defendant did not

"open[ ] the door" to questions about the results of a serology test on crime-scene blood when defense counsel initially inquired only whether police officers sent the blood to the FBI for testing. This Court held, however, that the trial justice's error in allowing hearsay evidence was harmless. *Id.*

In *State v. Johnson*, 258 Kan. 475, 905 P.2d 94, 99–100 (1995) the court held that when defense counsel elicited testimony from a witness that implied that the witness, rather than the defendant, was an accomplice to the crime, the state was entitled to admit into evidence otherwise inadmissible hearsay to rebut defense counsel's innuendo. On cross-examination of a state's witness, defense counsel asked whether there were "records of phone calls" between the witness and a third, unavailable person implicated in the crime. *Id.* at 99. Defense counsel also asked whether there was a note addressed to the witness from the same third person, warning the witness not to talk to police. *Id.* The court acknowledged that defense counsel knew that the note and the telephone conversations did not implicate the witness in the crimes, but sought to use their existence to "change the focus of the evidence" and imply that the witness, and not the defendant, was the co-participant in the crime. *Id.* at 100. The Kansas Supreme Court held that:

> "Once the defendant addressed the telephone conversation and the note in this manner during cross-examination, the State was entitled to rehabilitate [the witness] by introducing details of the conversation and note. The trial court was correct in permitting [the witness] to testify as to the contents of the note and his telephone conversation * * *." *Id.*

As in *Johnson*, allowing defense counsel here to admit into evidence only a portion of the relevant information about Mary's previous sexual encounter with John would "prejudice the State's right to a fair trial." *Id.* at 99. As such, under the curative-admissibility doctrine, I would hold that the trial justice did not err in allowing the state to present Sgt. Holsten's testimony about John's oral admission to rebut the defendant's suggestion that Mary's accusa-

tions against John—and therefore her accusations against her father—were untrue. Absent the curative admission of John's oral statement to Sgt. Holsten, the court should not have admitted the cross-examination testimony of Mary on this subject because of the misleading and incomplete impression it would have created in the minds of the jurors about the nature of the incident in question.

I also concur with the Court's analysis that the defendant waived his right to raise a Sixth Amendment claim here because he did not raise this issue at trial. I agree that, even if the trial justice erred in admitting John's testimony—and I do not believe he did—such an error was harmless for all the reasons the Court recites in its opinion. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to * * * harmless-error analysis"). Given that the evidence about John's alleged oral statement was not harmful to him in any event, the defendant does not satisfy this aspect of the exception to our raise-or-waive rule.

Moreover, by bringing up this previous incident with John on his cross-examination of Mary and by introducing John's written hearsay statement on his cross-examination of Sgt. Holsten, defendant waived his constitutional right to confront John about the latter's alleged oral admission to engaging in consensual sex with Mary. A defendant can waive his or her constitutional rights, including the Sixth Amendment right to confrontation. *United States v. Cooper*, 243 F.3d 411, 418 (7th Cir.2001); *Norton v. State*, 772 N.E.2d 1028, 1032 (Ind.Ct.App.2002) (defendant may waive his right to confront and cross-

examine witnesses both voluntarily and through trial error) (collecting cases). *See also State v. Borges,* 519 A.2d 574, 578 (R.I.1986) (an accused can waive his or her constitutional right to be present at his or her trial when such an absence is voluntary); *State v. Feng,* 421 A.2d 1258, 1266 n. 10 (R.I.1980) (a defendant who pleads guilty or *nolo contendere* to a criminal charge waives, among other constitutional rights, his Sixth Amendment right to confront the witnesses against him). Courts have frequently held that a defendant waived his or her constitutional rights with respect to a prosecutor's use of inadmissible evidence when the prosecutor used it only to rebut the defendant's initial introduction of similarly inadmissible evidence. *United States v. Steele,* 610 F.2d 504, 504, 505 (8th Cir.1979) (any error made in admitting statements defendant gave without *Miranda* warnings is not reversible when "defendant 'opened the door' and 'invited error' "); *People v. George,* 49 Ill.2d 372, 274 N.E.2d 26, 30 (1971) (defendant cannot complain of the prosecution's references at trial to property allegedly seized pursuant to an invalid search warrant because it was defense counsel that first elicited testimony about the property during cross-examination of prosecution witnesses). *See also Walder v. United States,* 347 U.S. 62, 64–65, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (when defendant perjures himself about his involvement in drugs, government can introduce evidence of illegally seized property solely to impeach defendant's credibility). Moreover, when defense counsel has a legitimate, tactical reason for entering hearsay statements into evidence, and the defendant does not dissent from that decision, the defendant has waived his or her Sixth Amendment right to confrontation. *Cooper,* 243 F.3d at 418; *Campbell v. State,* No.2002–KA–01448–COA, —— So.2d ——, 2004 WL 885691 at *4 (Miss.Ct.App. April 27, 2004). Most notably, the Su-

preme Court of Kansas, in *Johnson,* 905 P.2d at 100, held that "[b]y opening the door to otherwise inadmissible hearsay, a defendant waives the Sixth Amendment right to confrontation."

Here, as in *Johnson,* the trial justice properly admitted Sgt. Holsten's testimony about John's oral statement to rebut the suggestion by defendant's counsel that Mary made other allegedly false accusations against John of the same kind of sexual acts that she accused her father of committing. By questioning Mary on cross-examination about the incidents with John, defense counsel opened the door to John's otherwise inadmissible oral statement to Sgt. Holsten in which he admitted committing the sexual acts in question. In addition, defense counsel introduced into evidence John's written hearsay statement—one in which he denied having any sexual intercourse with Mary. By cross-examining Mary about her allegations against John—for the purpose of attacking her credibility—and by introducing John's written hearsay statement during the defense's cross-examination of Sgt. Holsten, defendant effectively waived his Sixth Amendment right to confront John concerning his oral admission to Sgt. Holsten about engaging in this conduct.

Moreover, the United States Supreme Court's recent opinion in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) is inapplicable to this situation. In *Crawford,* the Court did not express an opinion about whether the Confrontation Clause violation that occurred in that case was harmless error. *Id.* at 1359 n. 1. Additionally, the decision in *Crawford* does not affect this case because in *Crawford* the defendant did not open the door to the introduction of hearsay evidence and thereby waive his constitutional right to confront the declarant of such hearsay.

A contrary holding would allow defense counsel to mislead the jury by selectively revealing only those details that are potentially helpful to the defense concerning such previous incidents, while leaving the jury in the dark about other material evidence concerning what really happened. Thus, having chosen to raise this previous incident in his cross-examination of Mary and to introduce John's written hearsay statement on his cross-examination of Sgt. Holsten, I conclude that defendant waived his right to confront John about his alleged admission to Sgt. Holsten that he engaged in consensual sexual intercourse with Mary.

Although the trial justice did not base the admission of this oral hearsay on the above-referenced considerations, on appeal, we can affirm the trial justice's evidentiary ruling on grounds other than the ones actually relied upon to admit this testimony. *See State v. Froais,* 653 A.2d 735, 738 (R.I.1995) (collecting cases).

For these reasons, I concur in the decision of the Court to affirm the defendant's conviction, although, in some respects, I do so for different reasons from those relied upon by the majority.

FLAHERTY, Justice, dissenting.

I respectfully dissent from the holding in this case on two grounds. First, with respect to the testimony of Mary–Ellen Tillotson, I agree with the majority that her testimony regarding the matters related to her by Mary was hearsay evidence not subject to the exception set forth in Rule 803(4) of the Rhode Island Rules of Evidence, entitled *"Statements for Purposes of Medical Diagnosis or Treatment."* As hearsay evidence not subject to the exception, I agree with the majority that

this testimony should not have been admitted. However, where I depart from the majority is in its conclusion that the admission of Tillotson's testimony was harmless error.

This Court previously has set forth the factors to be utilized in determining whether error is harmless. Those factors include the "relative degree of importance of the witness testimony to the prosecution's case, 'whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and * * * the overall strength of the prosecution's case.' " *State v. Bustamante,* 756 A.2d 758, 766 (R.I. 2000) (quoting *State v. Texter,* 594 A.2d 376, 378 (R.I.1991)). After viewing Tillotson's testimony through the prism of the *Bustamante* factors, it is clear that Tillotson was an important witness, especially in the context of this case, where the competency of the complaining witness was subject to a judicial determination and where both sides conceded that Mary, the complaining witness, was developmentally disabled. It seems no surprise that the prosecution offered Tillotson as a witness in advance of Mary's testimony. This alone undercuts the description of her testimony as "cumulative." [12]

A fair reading of the record in this case also reveals that Tillotson's testimony contributed substantially to the strength of the prosecution's case. I therefore cannot agree that the admission of Tillotson's testimony was harmless error beyond a reasonable doubt. *See State v. Gomes,* 764 A.2d 125, 135 (R.I.2001). Consequently, I

---

**12.** Cumulative evidence is defined as: "Additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence (esp. that which does not need further support)." Black's Law Dictionary 577 (7th ed.1999).

believe that the admission of her testimony was reversible error.

Similarly, I would also hold that allowing Sergeant Holsten to testify about the oral statement that John gave to her concerning the nature of his sexual contact with Mary was reversible error. I agree with the majority that Sgt. Holsten's recollection of John's oral statement was hearsay and not subject to the exception set forth in Rule 804(b)(3) of the Rhode Island Rules of Evidence as a statement against interest. However, to then conclude that the officer's testimony was harmless flies directly in the face of the recent holding of the United States Supreme Court in the case of *Crawford v. Washington,* — U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The *Crawford* case involved a stabbing in Washington State, in which the defendant and his wife were given *Miranda* warnings and questioned about their involvement, if any, in the crime. *Crawford,* — U.S. at ——, 124 S.Ct. at 1357. During the interrogation, defendant's wife gave a statement implicating her husband. Thereafter, he was charged with assault and attempted murder. At trial, the wife was called to testify, but she invoked her marital privilege and declined to testify. At that point, the prosecution offered her statement into evidence as a statement against her penal interest, pursuant to Rule 804(b)(3) of the Washington Rules of Evidence. *Crawford,* — U.S. at —— - ——, 124 S.Ct. at 1357–58. Crawford ob-

jected on Sixth Amendment grounds.[13] The trial court admitted the statement after finding it trustworthy. *Id.* at 1358. On appeal, Crawford contended that its admission deprived him of his Sixth Amendment right to confront and cross-examine the witnesses against him.

In vacating the conviction, the United States Supreme Court noted that the wife's statement met all of the requirements for reliability set forth in the rules of evidence. However, the Court held that when there is a clash between those rules and the Sixth Amendment right to confrontation, the constitutional safeguards must prevail.

In the instant case, the argument for the admission of John's statement is far weaker than in *Crawford.* In *Crawford,* the United States Supreme Court concluded that the wife's statement met the requirements of the rules of evidence. Here, on the other hand, the majority specifically concludes that the challenged statement does not pass muster under Rule 804(b)(3). Nevertheless, the Court holds that the statement should be admitted.

The majority points out that:

"John, however, was neither at the time that he made the statements nor at the time of the trial a witness against defendant. His statements concerned an incident totally unrelated to the allegations against defendant and were never intended to be used as evidence against the accused herein."

---

**13.** Although, as noted by the majority, defense counsel did not challenge the admission of Sgt. Holsten's testimony on Sixth Amendment grounds until the submission of his "post-oral argument citation to supplemental authorities[,]" I believe that this constitutional rights issue falls squarely within the exception to the raise or waive rule because it satisfies the three-part test reiterated in *State v. Portes,* 840 A.2d 1131, 1141 (R.I.2004). The challenged

error was more than harmless, it was sufficiently addressed in the record and it was not raised because it constituted "a novel rule of law that counsel could not reasonably have known at the time of trial." *Id.* The requisite novel rule of law was provided by *Crawford v. Washington,* — U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), a decision that was issued after conclusion of the trial in the instant matter.

However, it does not seem to me that this is particularly relevant. What is relevant is that the statements did come into evidence over the defendant's objection and that the defendant had no ability to cross-examine John. The right to confront and cross-examine witnesses against criminal defendants is so fundamental that it is troublesome to determine its absence to be harmless error.

In other Sixth Amendment challenges, this Court has declared that a harmless error analysis is inappropriate. *See, e.g., State v. Torres*, 844 A.2d 155, 162 (R.I. 2004) (stating that "violations of the Sixth Amendment's public-trial provision are not subject to a 'harmless error' analysis"); *State v. Thornton*, 800 A.2d 1016, 1057 (R.I.2002) (observing that "harmless-error analysis does not apply to Sixth Amendment right-to-counsel-clause violations"). In light of *Crawford*, it is questionable whether a harmless error analysis is appropriate in the first instance. Even if appropriate, this Court has determined that such an analysis is implicated only after a defendant has been "afforded the opportunity to conduct sufficient cross-examination under the applicable rules of evidence to satisfy the [Sixth Amendment] constitutional guarantees" to confront and cross-examine adverse witnesses. *State v. Dorsey*, 783 A.2d 947, 950 (R.I.2001). Here, defendant was given no opportunity whatsoever to cross-examine John on the statements attributed to him by Sgt. Holsten.

While I agree with the majority that the defendant interjected the incident with John into the trial, it is not the incident that is in question here but the hearsay testimony offered by Sgt. Holsten. I cannot accept this as harmless error and would reverse on that ground as well.