**Supreme Court**

No. 2015-13-C.A.
(P1/13-591AG)

State                    :

v.                       :

Terrel Barros.           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|            |   |
|------------|---|
| State      | : |
| v.         | : |
| Terrel Barros. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** The defendant, Terrel Barros, appeals from judgments of conviction after a jury found him guilty of first-degree murder (count 1), using a firearm during a violent crime (count 2), possessing a firearm after having previously been convicted of a violent crime (count 3), carrying a handgun without a license (count 6), felony assault (count 7), and discharging a firearm during a violent crime (count 8). The defendant received consecutive life sentences for first-degree murder and using a firearm during a violent crime; three consecutive ten-year terms for possessing a firearm after having previously been convicted of a violent crime, carrying a handgun without a license, and discharging a firearm during a violent crime; and a twenty-year concurrent term for the felony assault. This case came before the Supreme Court for argument on September 28, 2016. On appeal, the defendant argues that the trial justice improperly excluded the testimony of Stephen Bodden on the grounds that Bodden effectively invoked his Fifth Amendment privilege against self-incrimination. The defendant argues that the exclusion of Bodden's testimony was reversible error and, therefore, the defendant is entitled to a new trial at which Bodden would be compelled to testify in front of the

jury. After careful consideration of the defendant's arguments and a thorough review of the record, we affirm the judgment of conviction.

# I

## Facts and Travel

Over the course of fifteen to twenty years, Jamal Cruz and Rokiem Henley had grown so close that they considered themselves to be like cousins. On the evening of August 25, 2012, Cruz and Henley, along with some friends, went to the Monet Lounge in Providence to celebrate another friend's birthday. The two men and their friends partied in the club's VIP area, drinking and socializing without incident. At 2 a.m., the club's lights came on to indicate that it was closing time. As Cruz and Henley were leaving the club, there was a "little verbal disagreement" between Cruz and two men—Stephen Bodden and defendant, Terrel Barros—but apparently no physical altercation occurred. With the verbal clash apparently behind them, Cruz and Henley went to the parking lot to retrieve Cruz's car. Cruz went ahead, first to the valet shack, and then to his car. After ten to fifteen minutes, Henley walked to Cruz's car, where he saw Bodden approach Cruz and heard him say, "What's up with that shit that happened in the club?" As Henley continued toward Cruz and Bodden, he heard two gunshots, and he was immediately aware that he had been hit in the leg. Cruz was less fortunate; he had been shot in the stomach, an injury that caused his death shortly thereafter.

Patrolmen Daniel Sirignano and Michael Pattie of the Providence Police Department were working a police detail at the Monet Lounge on the night of the shooting. The officers heard the gunshots and instantly reacted. Officer Sirignano was on the scene within seconds; he saw Bodden and Barros get into a Chevrolet Impala and then noticed that Bodden had a firearm that he was trying to conceal. Officer Sirignano detained Bodden and Barros at gunpoint.

Officer Pattie arrived moments later. Working together, the officers arrested and handcuffed Bodden and Barros. Ultimately, the pair was charged with multiple crimes related to the shooting.[1]

Over the course of an eight-day jury trial, the state presented evidence that Cruz had identified defendant as the shooter before he succumbed to his wounds. The state also presented an eyewitness who testified that he saw defendant with a gun in his hand. The defendant, however, argued that Bodden was the shooter. Indeed, Officer Pattie testified that, when Bodden was arrested, he said, "It's me. It's all me. It's all mine." Additionally, it was argued at trial that Bodden's DNA was found on the gun and defendant's was not.[2]

At trial, defendant expressed his intention to call Bodden as a witness. The defendant's attorney informed the trial justice that he believed Bodden would testify despite the charges that were pending against him relating to the same incident. However, when the prospect of Bodden's testimony was first addressed at an in-chambers conference, Bodden's attorney, a member of the Public Defender's Office, indicated that his client would invoke his Fifth Amendment privilege against self-incrimination should he be called as a witness. Accordingly, the trial justice ordered that a voir dire examination be conducted to determine if Bodden would, in fact, invoke his Fifth Amendment privilege and decline to testify.

At the voir dire examination, Bodden's attorney was unavailable. In accordance with the trial justice's request, another attorney from the Public Defender's Office was summoned and represented Bodden "on behalf of [the first attorney]." In light of the earlier indication that Bodden would decline to testify, it was no small surprise that, after he was sworn, he began

---

[1] The defendant, however, was tried separately from Bodden.

[2] It is worth noting that the expert witness who testified at trial said that DNA from multiple people was on the gun and that some of the DNA found on the gun matched defendant's DNA, but he added that there was not enough of defendant's DNA to positively identify him.

answering questions. Bodden testified on defendant's direct examination that defendant did not hand him a gun the night of the shooting. On cross-examination, Bodden further stated that he did not have a gun with him when he arrived at the Monet Lounge that evening. The trial justice then briefly interrupted the proceeding in an effort to confirm that the witness did intend to testify. Surprised by Bodden's statements, the prosecutor requested discovery, arguing that the state had not been provided with "any information with respect to what Mr. Bodden would testify to." Likewise, defense counsel requested time to speak to Bodden.[3] At that point, the proceedings recessed.

When the matter resumed, a senior member of the Public Defender's Office stepped in to assist in Bodden's representation. That attorney informed the court in no uncertain terms that Bodden would indeed invoke his privilege not to testify. When Bodden returned to the stand, he did just that and he did not answer any more questions. The trial justice then excused Bodden, ruling that his testimony "will not be had in front of the jury."

## II

## Discussion

## A

### Issue on Appeal

Before this Court, defendant raises but a single argument. He maintains that the trial justice erred when he ruled that Bodden properly had invoked his Fifth Amendment right against self-incrimination. The defendant insists that Bodden, because he had answered some questions, had waived his Fifth Amendment privilege and that he should have been compelled to testify in

---

[3] Oddly, prior to the voir dire examination, the defense represented that it had information that Bodden would testify, but when he actually began to do so, co-counsel for defendant claimed to be totally surprised that Bodden was answering any questions.

front of the jury.  It is important to note that, although defendant has framed the issue as one of constitutional dimension, the constitutional right in question resides in Bodden, and defendant does not have standing to contest Bodden's Fifth Amendment rights.  See United States Department of Labor v. Triplett, 494 U.S. 715, 720 (1990) ("Ordinarily, of course, a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'  * * *  This is generally so even when the very same allegedly illegal act that affects the litigant also affects a third party."); State v. Ducharme, 601 A.2d 937, 940 (R.I. 1991) (noting that the defendant did not have standing to object to a violation of a co-defendant's Fifth Amendment rights, even though that violation may have been instrumental in producing evidence that ultimately was prejudicial to the defendant); see also United States v. Seifert, 648 F.2d 557, 560 (9th Cir. 1980) (a nonparty witness's Fifth Amendment "privilege arises only when he asserts it as to a question put to him, and it is for the court to say whether he is entitled to the privilege").  Thus, in our opinion, the issue before the Court is not constitutional in nature, but evidentiary.  Simply put, we must determine if the trial justice should have compelled Bodden's testimony, thereby allowing it into evidence.

**B**

**Standard of Review**

"It is well established that decisions concerning the admissibility of evidence are 'within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.'"  State v. Gaspar, 982 A.2d 140, 147 (R.I. 2009) (quoting State v. Mohapatra, 880 A.2d 802, 805 (R.I. 2005)).  "[This] abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."  Sweet v. Pace Membership Warehouse, Inc., 795 A.2d 524, 527 (R.I. 2002)

- 5 -

(quoting Votolato v. Merandi, 747 A.2d 455, 460 (R.I. 2000)). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." State v. Reyes, 984 A.2d 606, 615 (R.I. 2009) (quoting State v. Evans, 742 A.2d 715, 719 (R.I. 1999)).

## C

## Analysis

### i

As a threshold issue, we must first determine whether defendant's appeal is properly before this Court. As we have said on innumerable occasions, "a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." State v. Bido, 941 A.2d 822, 829 (R.I. 2008). Moreover, "in order to satisfy the strictures of our 'raise-or-waive' rule, an evidentiary objection must be 'sufficiently focused so as to call the trial justice's attention to the basis for said objection * * *.'" State v. Diefenderfer, 970 A.2d 12, 30 (R.I. 2009) (quoting State v. Warren, 624 A.2d 841, 842 (R.I. 1993)). The Rules of Evidence require that a specific ground for an objection must be stated unless the reason for the objection is clear from the context in which it was made. See Rule 103(a)(1) of the Rhode Island Rules of Evidence. After a careful review of the record, we conclude that, despite several opportunities to do so, defendant did not articulate an objection to the trial justice's decision regarding Bodden's testimony.

After the senior public defender informed the court that Bodden would, in fact, invoke his Fifth Amendment privilege, the trial justice asked defense counsel, "Any comments you want to make?" This brief colloquy followed:

> "[DEFENSE COUNSEL]: We find it extremely disheartening, this chain of events. [Bodden's counsel] was

present this morning. I was under the impression that [Bodden's counsel] at some point had contact with Mr. Bodden. I can't honestly remember if [Bodden's counsel] told me he spoke to him this morning. I just don't know. But evidently [Bodden's successor counsel] became – had ample time to converse with him, and I believe he made it expressly clear when he took the stand that he had the absolute, steadfast desire to testify. The defense posed four or five questions and concluded its inquiry at that point, and then the prosecution began to pose questions on cross-examination.

"We feel as though he's still a competent, viable witness that's extremely important to the defendant's defense, and wish to call him.

"* * *

"THE COURT: * * *. We're now in the position that the record speaks for itself; namely, that the witness is going to invoke his Fifth [Amendment privilege] with respect to him.

"We are going to go out into the courtroom and make the record clear in that regard. Anything else?

"[DEFENSE COUNSEL]: No, Your Honor. Thank you."

Bodden then resumed the stand. Defense counsel attempted to ask the witness three more questions. Bodden's response to each question was the same; "I invoke my Fifth Amendment." Once it became clear that Bodden would testify no further, the trial justice ruled that the witness had "effectively and properly invoked" his Fifth Amendment privilege. The trial justice then excused the witness and said that "his testimony will not be had in front of the jury, nor will he be permitted to invoke any Fifth Amendment privilege in front of a jury, as it is inappropriate to do so." The trial justice then requested that the jury be brought into the courtroom. While all were waiting for the jury to return, another short colloquy occurred:

"THE COURT: * * *. Do you have your other witness available?

"[PROSECUTOR]: Judge, we have another witness.

"THE COURT: You still have the ME. We'll do the ME.

"[PROSECUTOR]: Judge, I believe Detective A'Vant is still on the stand.

"[DEFENSE COUNSEL]: I think it's time for Detective A'Vant's cross, Your Honor.

- 7 -

> "THE COURT: I didn't know if you wanted to interrupt him for the ME.
> "[PROSECUTOR]: No, Your Honor. Thank you. I'll have her wait and begin her testimony this afternoon.
> "(Jury enters at 2:56 p.m.)
> "THE COURT: I thank you for your patience, ladies and gentlemen. I can assure you that in your absence we were working.
> "Detective A'Vant.
> "[DEFENSE COUNSEL]: Thank you, Your Honor."

The defendant did not object to the trial justice's decision during or at the conclusion of the voir dire examination. Instead, when asked during the voir dire if he had anything else to say upon learning that Bodden would choose to invoke his Fifth Amendment privilege, defense counsel said, "No, Your Honor. Thank you." And upon conclusion of the voir dire, defense counsel again did not object, but instead continued with his cross-examination of Det. A'Vant. Defense counsel expressed disappointment with Bodden's decision not to testify, saying it was "disheartening." Disappointment, however, does not equate to an objection.

Defense counsel contends that it did object, citing State v. Baptista, 894 A.2d 911 (R.I. 2006) and Rule 103(a)(1), which says:

> "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> "(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *."

In Baptista, 894 A.2d at 914 n.2, we held that, pursuant to Rule 103(a)(1), the defendant properly preserved his appeal of an evidentiary issue despite not stating a ground for his objection at trial. Also, in Baptista, the defendant had objected twice to the relevant testimony, and we said that the "objections in [that] case were more than sufficiently focused as to direct the trial justice's attention to the objection's basis." Id.

- 8 -

The defendant's argument falters because, unlike Baptista, defendant in this case never actually objected either during the voir dire examination or at trial. The central principle of Rule 103(a)(1) rests on the premise that a trial justice may infer the specific grounds of an objection, even when an objecting party does not make those grounds clear. The defendant correctly asserts that the trial justice was on notice that the issue at hand during the voir dire examination was whether Bodden validly invoked his privilege against self-incrimination. Being aware of the situation, however, allows the trial justice to infer only the grounds of an objection that was actually made and does not permit a trial justice to infer an objection in and of itself. Despite expressing disappointment at the turn of events, defendant did not raise any objection to the trial justice's ruling. Furthermore, the above analysis notwithstanding, defendant's reliance on Rule 103(a)(1) is misplaced because the rule deals with situations in which "the ruling is one admitting evidence." Here, however, defendant is challenging the trial justice's decision to exclude evidence. Thus, it is our opinion that Rule 103(a)(1) is inapplicable.

**ii**

Even though defendant maintains that he did not waive his objection below, he nonetheless argues in the alternative that, even if he did not object at trial, this Court should adopt an exception to the raise-or-waive rule that would allow a review of the merits of the objection he now raises on appeal. To that end, defendant proposes that "[f]or capital offenses, due to the high stakes involved when an issue is not properly preserved, * * * this Court [should] adopt the" four-pronged test enunciated in United States v. Krynicki, 689 F.2d 289, 291-92 (1st Cir. 1982).[4]

---

[4] We recently had occasion to consider adopting the Krynicki test in State v. Florez, 138 A.3d 789, 796 n.9 (R.I. 2016), and "[w]e decline[d] to do so." The Krynicki court noted that "'exceptional cases or particular circumstances' may arise where a court will review questions of

- 9 -

As discussed above, "[t]his Court staunchly adheres to the 'raise or waive' rule." State v. Figuereo, 31 A.3d 1283, 1289 (R.I. 2011). We have recognized but one exception to the raise-or-waive rule where "basic constitutional rights are concerned." State v. Gomez, 848 A.2d 221, 237 (R.I. 2004) (quoting State v. Donato, 592 A.2d 140, 141 (R.I. 1991)). "[T]o fall within this exception, the defendant must show: (1) that the error complained of amounts to more than harmless error; (2) that a sufficient record exists to permit a determination of the issue; and (3) that 'counsel's failure to raise the issue [before trial] must be premised upon a novel rule of law that counsel could not reasonably have known during the trial.'" State v. Florez, 138 A.3d 789, 796 (R.I. 2016) (quoting Cronan ex rel. State v. Cronan, 774 A.2d 866, 878 (R.I. 2001)). Here, because defendant's constitutional rights were not violated, nor was the failure to raise the issue premised on a novel rule of law, the narrow exception does not apply.

We remain convinced that the raise-or-waive rule is "an important guarantor of fairness and efficiency in the judicial process." DeMarco v. Travelers Insurance Co., 26 A.3d 585, 628 n.55 (R.I. 2011). The rule should not "be dismissed as a pettifogging technicality or a trap for the indolent; the rule is founded upon important considerations of fairness, judicial economy, and practical wisdom." National Association of Social Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995). The raise-or-waive rule requires that objections are to be raised at trial so that opposing counsel has "an opportunity to respond appropriately to claims raised." State v. Burke, 522 A.2d 725, 731 (R.I. 1987). The rule has "the salutary effect of making the * * * trial on the

---

law neither pressed nor decided below." United States v. Krynicki, 689 F.2d 289, 291 (1st Cir. 1982) (quoting United States v. Miller, 636 F.2d 850, 853 (1st Cir. 1980)). In those exceptional cases, the court applies a four-pronged analysis in determining whether to review issues not objected to at trial: (1) the unpreserved issue must be purely legal and the record requires no further development; (2) the party's argument is "highly persuasive"; (3) reaching the straightforward legal issue promotes judicial economy and aids the administration of the criminal justice system; and (4) declining to reach the issue "would result in a miscarriage of justice." Id. at 291-92.

merits the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative" appellate review. Wainwright v. Sykes, 433 U.S. 72, 90 (1977). Accordingly, we again decline the invitation to adopt Krynicki.[5]

At trial, defendant did not properly articulate the issue he now appeals, nor does his case fit into our recognized exception to the raise-or-waive rule. Therefore, we conclude that defendant's appeal is not properly before this Court.

**iii**

Although we need not reach the issue because it was not raised below, we pause to note, nonetheless, that our review of the record fails to reveal any error. The defendant contends that the trial justice improperly excused Bodden as a witness based upon an erroneous conclusion that Bodden had invoked his Fifth Amendment privilege, when, to the contrary, defendant believes that the witness had waived his privilege by beginning to testify. We reiterate that the decision to exclude Bodden's live testimony was an evidentiary ruling, and thus falls within the trial justice's sound discretion. That said, a trial justice's evidentiary decision is reviewed to ensure that it was not guided by any erroneous legal conclusions. If Bodden properly invoked his Fifth

---

[5] In Hormel v. Helvering, 312 U.S. 552, 557 (1941), Justice Black wrote:

> "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice."

When considering our own rules regarding raise-or-waive, we find that Justice Black's words continue to ring true. We believe there is value in our "orderly rules of procedure," and believe that the rules "promote the ends of justice." In the present case, we see nothing that offends our sense of "fundamental justice," and therefore decline to recognize another exception to the raise-or-waive rule at this time.

Amendment privilege, then the trial justice was well within the bounds of his discretion when he excluded him as a witness.

Even though Bodden began to testify at the voir dire examination, he subsequently invoked his Fifth Amendment privilege against self-incrimination. Relying on <u>Mitchell v. United States</u>, 526 U.S. 314 (1999), defendant asserts that Bodden should have been compelled to continue testifying because "[i]t is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." <u>Id.</u> at 321 (citing <u>Rogers v. United States</u>, 340 U.S. 367, 373 (1951)). The <u>Mitchell</u> Court, however, went on to instruct that the "privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination[.]'" <u>Id.</u> (quoting <u>Brown v. United States</u>, 356 U.S. 148, 154-55 (1958)). That is, the dispositive factor is whether additional questions are required to test the accuracy of what was already disclosed. <u>Cf.</u> 1 Kenneth S. Broun, <u>McCormick on Evidence</u> § 133 at 757 (7th ed. 2013) (at its foundation, the <u>Mitchell</u> rule "rests primarily on the need to avoid leaving a trier of fact with the limited version of relevant information that would be before it if a witness was permitted to at will pick a point at which to invoke the privilege").

The court in <u>Klein v. Harris</u>, 667 F.2d 274 (2d Cir. 1981), articulated an alternative analysis to determine the scope of Fifth Amendment waiver. Specifically, waiver can be inferred only when:

> "(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the [F]ifth [A]mendment's privilege against self-incrimination." <u>Id.</u> at 287.

Although Bodden answered six questions on direct examination (one of which was stating his name), the trial justice determined that "[t]here was no opportunity whatsoever" for the state to cross-examine him. The trial justice reasoned that "the State was never permitted to confront the witness with the statement that's been admitted into evidence, 'It's me. It's all me. It's mine.' There's no question that that would've been a crucial area of confrontation in cross-examination, not to mention all the other evidence that has been admitted." Accordingly, in the absence of any relevant cross-examination, the trial justice did not err when he ruled that Bodden properly invoked his Fifth Amendment privilege during the voir dire examination. Furthermore, because Bodden's limited testimony occurred during a voir dire examination, there is no risk that the finder of fact—in this case, the jury—could have been left to rely on a "distorted view of the truth."

## III

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record is remanded to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  State v. Terrel Barros.

**CASE NO:**  No. 2015-13-C.A.
(P1/13-591AG)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  October 31, 2016

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For State:   Virginia M. McGinn
             Department of Attorney General

For Defendant:  Joseph J. Voccola, Esq.