January 23, 2026

**Supreme Court**

No. 2024-255-C.A.
(P1/21-1161A)

State                      :

v.                      :

Wallace Cable.                  :

NOTICE:   This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone (401) 222-3258 or
Email:    opinionanalyst@courts.ri.gov,    of    any
typographical  or  other  formal  errors  in  order  that
corrections may be made before the opinion is published.

State                    :

v.                       :

Wallace Cable.           :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The defendant, Wallace Cable (defendant or Cable), was charged with three counts of first-degree child molestation sexual assault and one count of second-degree child molestation sexual assault.[1]  After two counts were dismissed, a jury found the defendant not guilty on one count of first-degree child molestation sexual assault and guilty on the remaining charge of first-degree child molestation sexual assault.[2]

---

[1] The record contains different spellings of the defendant's first name.  We adopt the spelling used in the defendant's brief.

[2] Count 1 was dismissed by the state pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure and count 3 was dismissed by the trial justice, upon the defendant's motion for judgment of acquittal, which the state did not oppose.

- 1 -

On appeal, defendant claims that the trial justice erred when he permitted the state to introduce into evidence multiple out-of-court statements concerning what the complaining witness told a treating physician about the alleged sexual assaults. We reject defendant's arguments, and therefore affirm the judgment of conviction.

**Factual Background**

Maria[3] was fourteen years old at the time of trial and described multiple instances of sexual assault perpetrated upon her by defendant, her biological father.[4] Maria never lived with defendant and testified that she did not recall spending much time with him before the age of six. Instead, Maria lived with her mother.[5] Although the record does not detail the precise timeline, at some point defendant entered Maria's life. Initially, Maria testified, she had a loving relationship with her father, but that changed when the events that form the basis of this indictment occurred.

Accordingly, counts 2 and 4—both charging first-degree child molestation sexual assault—were the only charges presented to the jury for its consideration.

[3] We identify the complaining witness through the use of a pseudonym in order to afford some measure of privacy.

[4] Although Maria testified concerning multiple instances of child molestation sexual assault, we recount only the events presented to the jury for its deliberation (counts 2 and 4).

[5] As discussed *infra*, Maria reported that she had been physically assaulted by her mother.

In the spring of 2020—just after Maria turned eleven years old—she and defendant rode the bus to his mother's residence, where they planned to spend the evening. Although they were the only passengers on an otherwise empty bus, defendant and Maria sat in the back. Maria testified that, during the bus ride, defendant "started touching, like, my thighs and then over -- under my clothes, my pants" and "put his hand down under my pants, and then he put his fingers inside my -- the part that I pee." Maria later clarified that she was referencing her vagina. This episode ended when the bus approached its destination; thereafter Maria and defendant disembarked and walked to his mother's residence.

Maria was no stranger to her grandmother's home; she had previously resided there for an entire summer. On this occasion, though, the residence was crowded with other family members who also planned to stay the evening. While the other relatives snoozed in locations throughout the residence, Maria and defendant retired to the living room; he slept on the couch, and she rested on a nearby air mattress. Soon, however, defendant positioned himself on the air mattress and instructed that Maria remove her underwear. She refused but defendant persisted; at trial, Maria testified that he "move[d] my shorts and underwear to the side," "pull[ed] his pants halfway down and puts his private area into my private, butt." This assault lasted minutes, ending after defendant ejaculated. Despite the presence of family members,

Maria did not immediately report this incident, explaining that she "was still scared and because he was my dad so I didn't want anything to happen to him."

In the ensuing months, Maria continued spending time with defendant and, eventually, revealed that he had assaulted her. Maria disclosed the assaults to a young friend, and later to the friend's mother; but, at Maria's insistence, neither reported the incidents. Thereafter, on September 14, 2020, Maria confided in Justin Pasquazzi, an instructor in an after-school program that she had been attending. Pasquazzi did not remain silent.

Pasquazzi was the president and interim executive director of an after-school program called Arts, Sports, and Technology Resource Organization (ASTRO), which provided wellness and educational opportunities to children and adults. Pasquazzi testified that ASTRO works with families at risk for Department of Children, Youth, and Families (DCYF) involvement and children having problems in the home, behavioral issues, and/or mental health challenges. Pasquazzi related that Maria disclosed that she had suffered multiple instances of physical assault exacted by her mother and sexual assault perpetrated by defendant. Maria also revealed that she had engaged in self-harm.

As the after-school program was ending and students were being dismissed, Pasquazzi transported Maria to Hasbro Children's Hospital (Hasbro or hospital). In so doing, Pasquazzi later recounted that he "didn't feel like it was safe to bring her

back to the house, so I * * * [drove] her to the hospital to be seen" and that he "didn't feel [Maria] was safe to return back to her home and I thought that [bringing her to Hasbro] was the best thing to do at the time." For her part, Maria explained that she revealed the sexual assaults because she could no longer "keep it a secret up in me anymore" and that the secret was "hurt[ing] me bad like I was like crying a lot." Maria further revealed "try[ing] to hurt myself before."

Upon arrival, Maria was examined by doctors in the emergency department and remained at Hasbro into the early morning hours. A seventy-two-hour hold was issued, effectively removing Maria from her biological parents' custody and placing her with a relative through the temporary custody of DCYF. After conducting an examination, the emergency department referred Maria to the Aubin Child Protection Center (Aubin Center) at Hasbro, for an appointment later that morning. During that appointment, Christine Barron, M.D., a physician at the Aubin Center, conducted a comprehensive examination of Maria.

Doctor Barron testified that the Aubin Center at Hasbro provides comprehensive medical evaluations for children and young adults suspected of having been physically or sexually assaulted. When presented with a new patient, Dr. Barron explained, she would "obtain history from anyone who is available to provide that history," and she further detailed:

> "We would review any records that are available including prior evaluations by physicians or emergency department.

We will look for past medical history, something we call review of systems which we identify if they have any complaints. We then actually will do a physical exam head to toe including a genital exam and then we will determine if there is additional labs, review labs and then we do a report that includes all of that information as well as an assessment and our recommendations."

Significantly, when asked whether the evaluation process for children contains a mental health component, Dr. Barron responded, "Absolutely. * * * I would speak with that child separately in regards to their medical and mental health to be able to identify the safety concerns."

Doctor Barron was declared an expert in child-abuse pediatrics and testified concerning her examination of Maria, including statements made during the course of the examination. These statements—which form the basis of defendant's appeal—include Dr. Barron's testimony that Maria:

- "reported a history of physical abuse and neglect and then reported sexual abuse by her father. Her exact words were that he quote raped me twice end quote. I asked her who that was and she identified him as quote Wallace Cable."

- "reported that there were incidents that included kissing on her mouth, fondling her breast over and under clothing, fondling her vagina under and over clothing and two separate instances of pen[ile] anal penetration and she experienced anal pain and bleeding in both instances and anal pain and bleeding in the last incident."

- "reported that [the first incident] occurred at her father's girlfriend's home, that there was pen[ile] anal penetration

with pain. That incident would have been a year or two before my exam."[6]

- "stated that her father had placed his hands over her mouth."

- "identified [Cable] as her father."

- indicated that the second incident "was approximately four to six months prior to [her] evaluation."

- stated "[t]hat the [second] incident occurred at her paternal grandmother's home in East Providence, and that she experienced both anal pain and bleeding after the incident of pen[ile] anal penetration."

The defendant also challenges on hearsay grounds Dr. Barron's testimony that the identification of the person who sexually assaulted Maria is

> "important because as I stated earlier, my job is also to determine safety and therefore, it is part of my history to obtain who the patient is disclosing about to determine whether or not that requires me as a mandated reporter and to ensure there is a safety plan in place as to whether or not that child would come in contact with that individual again. So in this case since she identified it was her father, mandatory reporting was done to DCYF with a physician recording examination and [a] 72 hour hold was issued in the emergency room and that is why she was placed with [a relative] and came into the Aubin Center with [that relative]."

---

[6] Although Dr. Barron made this statement to the jury, the facts underlying this incident did not comprise counts 2 or 4, and therefore were not presented to the jury for its deliberation. Accordingly, we have omitted discussion of the underlying events.

Finally, defendant contests Dr. Barron's testimony that Maria "stated that her father told her not to tell or he would go to jail."

At the conclusion of the state's case, defendant pressed a motion for judgment of acquittal. Although the state objected to dismissing counts 2 and 4, the state did not object to the dismissal of count 3. The trial justice granted the motion for judgment of acquittal on count 3 and denied the motion for judgment of acquittal on counts 2 and 4. Thereafter, the jury found defendant not guilty on count 2 and guilty on count 4. The trial justice sentenced defendant to life in prison at the Adult Correctional Institutions. This appeal ensued.

Additional relevant information will be set forth as needed.

## Standard of Review

It is axiomatic that this Court "review[s] a trial justice's admission of evidence under the deferential abuse of discretion standard." *State v. Benitez*, 266 A.3d 1221, 1227 (R.I. 2022) (quoting *State v. Brown*, 9 A.3d 1240, 1247 (R.I. 2010)). "Under that standard, 'it is well established that this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling constitutes an abuse of the justice's discretion that prejudices the complaining party.'" *Id.* (brackets omitted) (quoting *State v. Flori*, 963 A.2d 932, 941 (R.I. 2009)).

**Discussion**

On appeal, defendant argues that the statements to Dr. Barron that are challenged as hearsay were not made for the purpose of medical diagnosis or treatment. According to defendant, the trial justice improperly concluded that Dr. Barron's testimony relaying these statements was admissible pursuant to Rule 803(4) of the Rhode Island Rules of Evidence. Before examining the hearsay arguments, however, we consider the state's contention that defendant failed to preserve this issue for appeal.

**A**

**The Motions *in Limine* and Waiver**

The admissibility of Dr. Barron's testimony was the subject of dueling motions *in limine*. Specifically, Cable sought to preclude Dr. Barron's testimony in its entirety, arguing, among other grounds, that Maria was not brought to the Aubin Center at Hasbro for the purpose of medical diagnosis or treatment.[7] Rather, defendant insists that Maria had been treated at Hasbro and then referred to the Aubin Center, a Hasbro facility, for the purpose of reporting the crime and the collection of evidence for prosecution. It was during the evaluation at the Aubin Center that Maria expressed the hearsay statements challenged in this appeal.

---

[7] On appeal, defendant does not challenge the trial justice's refusal to exclude Dr. Barron's testimony *in toto*. The defendant's appellate argument is limited to the admissibility *vel non* of the challenged hearsay statements.

- 9 -

Alternatively, Cable argued that if Dr. Barron were permitted to testify, the challenged hearsay statements did not fall within Rule 803(4) and, therefore, should be excluded.

Disparately, the state sought to admit Dr. Barron's testimony and submitted that, because Maria "reported [to the Aubin Center at Hasbro] for medical treatment or diagnosis," the testimony was admissible as an exception to the rule against hearsay evidence. *See* R.I. R. Evid. 803(4). In this respect, the state noted that Dr. Barron's evaluation "contain[ed] a psychological element as well as [a] physical one * * *."

In ruling on the motions *in limine*, the trial justice recognized that he did not know "exactly the testimony that is going to be introduced * * *." Nonetheless, he expressed that "based on the way it has been described by both counsel," he concluded that Maria "presented with mental health issues, suicidal ideations * * * [and that the responses] these doctors received from this patient [were] clearly for the purposes of diagnosis and treatment and are therefore admissible." Accordingly, the trial justice declared that Dr. Barron would be permitted to testify concerning the out-of-court statements made by Maria "as they were related to diagnosis and treatment * * *."

Critically, with respect to the statements challenged as hearsay, however, during trial, defendant failed to object to all but a single statement Maria made at the

- 10 -

Aubin Center, *viz.*, "that her father told her not to tell or he would go to jail." While that specific objection is preserved for appeal, *see infra*, we conclude that all other hearsay statements challenged in this appeal have been waived.

"It is beyond peradventure that 'this Court staunchly adheres to the raise or waive rule.'" *State v. Tavares*, 312 A.3d 449, 458 (R.I. 2024) (quoting *State v. Barros*, 148 A.3d 168, 174 (R.I. 2016)). "As we have said on innumerable occasions, a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *Id.* (quoting *Barros*, 148 A.3d at 172).

In this context we have declared that, "[a]lthough [a] defendant objected to the state's motion *in limine*, such an objection is not adequate to preserve the issue for appeal." *State v. Mensah*, 227 A.3d 474, 483 (R.I. 2020). Rather, "'[t]his Court repeatedly has stated that the grant or denial of a motion *in limine* is by no means a final ruling on the admissibility of the evidence addressed in the motion,' * * * and such a ruling is 'preliminary in nature.'" *Id.* (brackets omitted) (first quoting *State v. Buchanan*, 81 A.3d 1119, 1126 (R.I. 2014), then quoting *State v. Colon*, 198 A.3d 1249, 1255 (R.I. 2019)). "The inherent purpose of a motion *in limine* is to prevent the proponent of potentially prejudicial matter from displaying it to the jury in any manner until the trial court has ruled upon its admissibility *in the context of the trial itself*." *Id.* (emphasis added) (quoting *Colon*, 198 A.3d at 1255). As such, "it is incumbent upon counsel to raise timely and appropriate evidentiary objections

- 11 -

*throughout the trial* in order to preserve the issues for appeal." *Id.* (emphasis added) (quoting *Colon*, 198 A.3d at 1255). Here, except for Maria's out-of-court statement concerning defendant's fear of imprisonment, Cable posed no hearsay objections to the challenged statements during Dr. Barron's testimony.[8]

To be sure, defendant suggests that the hearsay issue is adequately preserved because it was raised during the motions *in limine* and because it was argued during Dr. Barron's testimony. Our precedent controls the former argument, *see supra*, and is highlighted by the trial justice's *in limine* recognition that he did not "know exactly

---

[8] Although the record is not entirely clear, our review reveals that the hearsay statements discussed during the hearing on the motions *in limine* were limited in scope as compared to the hearsay statements challenged in this appeal. For instance, during the hearing on the motions *in limine*, defendant did not seek to exclude Maria's statements that she had been "raped," that Maria had experienced pain or bleeding after the sexual assaults, or that defendant had placed his hands over Maria's mouth. Similarly, on appeal, defendant contends that certain challenged hearsay statements were improperly admitted into evidence because the state failed to establish a proper foundation and/or demonstrate that Maria's statements were motivated by a desire to seek a medical diagnosis or treatment. These arguments, however, were not raised during the hearing on the motions *in limine* or during trial. Typically, foundational issues are intensively fact-driven and dependent upon a witness's trial testimony.

In a proper case, a trial justice has the discretion to direct an examination of a voir dire witness in order to consider foundational issues. Here, neither party requested a voir dire, nor do we suggest that a voir dire was necessary in this case. We make these observations to underscore the inherently preliminary nature of the motions *in limine* and the necessity to renew (or raise) objections during trial. Because the foundational and motivational issues were not raised during trial, they are likewise waived. *See State v. Tavares*, 312 A.3d 449, 458 (R.I. 2024).

- 12 -

the testimony that is going to be introduced," as well as the trial justice's *in limine* decision, which was premised upon "the way it has been described by both counsel * * *."

The defendant's latter argument—that the Rule 803(4) objection was renewed during Dr. Barron's testimony—is also misguided and contradicted by the record. In this regard, defendant did not object at the beginning of Dr. Barron's testimony, nor was defendant's objection in response to the state's effort to elicit hearsay testimony. Rather, when the state moved to qualify Dr. Barron as an expert in the field of child-abuse pediatrics, defendant requested a sidebar. The defendant's entire objection advised the trial justice that "we filed a motion in limine pretrial. *One of the grounds for excluding Dr. Barron's testimony was that her testimony would* [*not*] *be helpful to the trier of fact, under Rule 703 I believe, the rule about experts. I just want to renew that objection for the record*." (Emphasis added.) The trial justice immediately responded and elucidated the singular focus of the objection: "So, just so I understand, in essence are you saying that there is *nothing material or relevant* that [Dr. Barron] could offer with respect to the allegations in the case." (Emphasis added.) Defense counsel responded, "That's right." Thereafter, although the state articulated its response and invoked Rule 803(4), the trial justice overruled the objection and focused on defendant's argument seeking to exclude Dr. Barron's testimony *in toto*:

- 13 -

"I think clearly *Dr. Barron does have relevant and material information* that would be appropriate to be heard by the jury. She, again, she did see the complaining witness at Hasbro Children's Hospital, examined her, and that examination was clearly for purposes of diagnosis and treatment of the complaining witness at that time, and I see no bases *to exclude her testimony*. I can't think of any basis upon which to do that. *I think she is an appropriate witness particularly for this type of case*." (Emphases added.)

We are satisfied that defendant's objection—which was devoid of any reference to hearsay—was in response to the state's effort to qualify Dr. Barron as an expert and sought to preclude Dr. Barron's testimony. The objection was not precipitated by a pending question and did not raise a hearsay objection. The trial justice's decision to overrule the objection on relevancy and materiality grounds and thereafter to qualify Dr. Barron as an expert in the field of child-abuse pediatrics supports our conclusion. Accordingly, except for the out-of-court statement concerning defendant's fear of imprisonment, we are of the opinion that the hearsay issues are not preserved and are deemed waived. *See Tavares*, 312 A.3d at 458.

**B**

**Rule 803(4)**

"Hearsay evidence is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Lynch*, 854 A.2d 1022, 1030 (R.I. 2004) (quoting *State v. Angell*, 122 R.I. 160, 167, 405 A.2d 10, 14 (1979)). "As a rule, hearsay statements are

- 14 -

excluded from the evidence introduced at trial because the usual safeguards of the oath, confrontation, and cross-examination, are not available." *Id.* There are, however, numerous exceptions to this rule, including statements made for the purpose of medical diagnosis or treatment. *See id.*

Rule 803(4), entitled "Statements for Purposes of Medical Diagnosis or Treatment," permits hearsay statements to be admitted into evidence when the statements were

> "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or *external source thereof* insofar as *reasonably pertinent to diagnosis or treatment*, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial." (Emphases added.)

The underlying rationale supporting the admissibility of hearsay statements made for the purpose "of medical diagnosis or treatment is that a person has a 'strong motivation to be truthful about information that will form the basis of his or her diagnosis and treatment.'" *Lynch*, 854 A.2d at 1031-32 (brackets omitted) (quoting Advisory Committee's Note to Rule 803(4)). "Statements that narrate details unconnected with either diagnosis or treatment, however, are inadmissible unless they fall under another hearsay exception." *Benitez*, 266 A.3d at 1228 (quoting *State v. Watkins*, 92 A.3d 172, 187 (R.I. 2014)). This Court has emphasized that "[a] declarant's motive in making the statement must be consistent with seeking

- 15 -

diagnosis or treatment" and that "[t]here must * * * be a proper foundation showing that the statements in question were made 'for the purposes of medical diagnosis or treatment.'" *Lynch*, 854 A.2d at 1031 (quoting R.I. R. Evid. 803(4)). Admissibility "hinge[s] on whether the statements were '*reasonably pertinent to the formulation of a medical diagnosis or treatment.*'" *Id.* (emphasis added) (quoting *State v. Momplaisir*, 815 A.2d 65, 72 (R.I. 2003)).

We conclude that Dr. Barron's testimony relaying Maria's statement that defendant threatened that if she disclosed the sexual assaults "he would go to jail" was supportably admissible pursuant to Rule 803(4). The record is clear that despite alleging multiple occurrences of sexual assault spanning approximately a one- or two-year period, Maria kept this information secret, pursuant to defendant's threat. When asked about the nondisclosure, the psychological dilemma was self-evident; Maria explained that at the time she still loved her father, and that she was "scared and because he was my dad * * * I didn't want anything to happen to him." In this respect, Dr. Barron examined Maria for psychological trauma and mental health issues associated with an eleven-year-old girl having been sexually assaulted by her biological father, and she evaluated Maria's ongoing risk for future self-harm—a concern heightened by her reports of a prior instance of self-harm. *See State v. White*, 296 A.3d 692, 704 (R.I. 2023) ("It is a completely logical inference that [the complaining witness described the sexual assaults] for the purpose of obtaining

- 16 -

whatever relief the * * * hospital could provide—namely such diagnosis or treatment as might be appropriate, whether it be through traditional hands-on medical intervention or the prescription of medication or intelligent and supportive counsel from a medical professional.").

Equally important, Dr. Barron elucidated that, in conjunction with the medical examination, Maria revealed past occurrences of self-injurious behavior and suicidal ideations; there is no doubt that establishing the root cause of these mental health issues falls within Rule 803(4). As we previously explained:

> "Given [the child's] history of self-harm and the resultant importance of treating the effect on her mental health of the abuse she purportedly suffered, we perceive no reversible error in the trial justice's determination that the statements at issue were 'inextricably intertwined' with [the doctor's] examination and with her need to obtain all the reasonably pertinent information needed to treat [the child]." *Benitez*, 266 A.3d at 1229; *see also White*, 296 A.3d at 706 n.16 ("Unquestionably, part of the nurse's role in such a situation was to deal with the patient's emotional state.").

Likewise, we perceive no error in the trial justice's admission of Maria's statement given its obvious import to Dr. Barron's treatment of Maria's mental health and history of self-harm. As such, the trial justice did not abuse his discretion in admitting this statement pursuant to Rule 803(4).

Moreover, to the extent that the statement assigned fault, we are satisfied that the trial justice was within his discretion to admit the statement. Doctor Barron's

- 17 -

testimony belies any argument that the statement was not for the purpose of medical diagnosis or treatment. Although defendant did not reside in Maria's immediate household, there is no dispute that this eleven-year-old child was in her biological father's sole care for extended periods of time. *See Lynch*, 854 A.2d at 1031 ("When the perpetrator is a member of the child's immediate household, his or her identity may well be reasonably pertinent not only to the formulation of a treatment plan, but also to ensure that the child is in a safe and secure environment so that treatment can be effectuated."). As the state aptly characterized during the hearing on the motions *in limine*, "[t]hat is how the whole predicament came about." And, even after the last incident of sexual assault, Maria testified that she continued spending time with defendant.

As Dr. Barron related, the purpose of Maria's out-of-court statement assigning fault to defendant was to implement a safety protocol in an effort to prevent future risk of self-harm and to provide protection to a child of tender years who had been sexually assaulted by her biological father. After performing the evaluation, Dr. Barron concluded that DCYF's temporary custody, and placement with a relative, should be continued with Maria having no contact with either biological parent. The trial justice did not abuse his discretion in admitting this testimony.

# C

## Cumulative Evidence

Even assuming *arguendo* that Dr. Barron's testimony concerning defendant's fear of imprisonment did not fall squarely within Rule 803(4), this evidence was undoubtedly cumulative and harmless in light of the testimony adduced. "Cumulative evidence means evidence tending to prove the same point to which other evidence has been offered." *Benitez*, 266 A.3d at 1229 (brackets omitted) (quoting *Lynch*, 854 A.2d at 1032). This Court has also recognized that "the admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when the defendant's guilt is sufficiently established by proper evidence." *Id.* (brackets omitted) (quoting *State v. Robinson*, 989 A.2d 965, 979 (R.I. 2010)). "The test to be applied is 'a retrospective one, administered at the close of all the evidence to determine whether the admission of certain evidence was harmless in light of all the evidence admitted on that point.'" *Id.* (quoting *Watkins*, 92 A.3d at 189).

Our review reveals that defendant's statement concerning his fear of imprisonment was independently admitted into evidence; and, significantly, it was admitted without objection. Specifically, Maria testified that defendant told "me that I can't tell anybody about this because he would go back to jail or he would go

to jail." Later in her testimony, Maria was asked, "Mr. Cable told you not to tell anyone or he would go to jail, right?" She answered, "Yes."

In light of this independent evidence, we are satisfied that Dr. Barron's testimony that Maria "stated that her father told her not to tell or he would go to jail" was repetitious and cumulative of Maria's own testimony. *See Benitez*, 266 A.3d at 1229 ("Thus, Dr. Adewusi's short testimony with respect to various facts that [the complaining witness] had provided to her in the course of her evaluation * * * was simply a repetition of [the complaining witness's] own lengthy testimony which was highly specific * * *."). Notably, "[t]he usual reasons for excluding hearsay statements—lack of the oath, confrontation, and cross-examination—are greatly abated here because [Dr. Barron's] testimony did not reveal anything other than that testified to by [Maria] herself." *Lynch*, 854 A.2d at 1032. We also observe that Dr. Barron did not opine on the veracity or credibility of Maria's statement. *See Benitez*, 266 A.3d at 1229-30; *Lynch*, 854 A.2d at 1033 ("In her testimony, Ms. Tillotson only repeated [the complaining witness's] statements. She offered no opinion about their veracity or credibility."). Accordingly, we are satisfied that the statement at issue represented cumulative evidence.

## Conclusion

For the reasons stated, the judgment of conviction is affirmed. The papers in this case are remanded to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Wallace Cable. |
| **Case Number** | No. 2024-255-C.A. (P1/21-1161A) |
| **Date Opinion Filed** | January 23, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For State: <br><br> Virginia M. McGinn <br> Department of Attorney General <br> For Defendant: <br><br> Kara J. Maguire <br> Rhode Island Public Defender |